Rick WILDER, Appellant (Plaintiff),

v.

CODY COUNTRY CHAMBER OF COM-
MERCE, a Wyoming non-profit cor-
poration, Appellee (Defendant).

CODY COUNTRY CHAMBER OF COM-
MERCE, a Wyoming non-profit cor-
poration, Appellant (Defendant),

v.

Rick WILDER, Appellee (Plaintiff).

Nos. 95–245, 95–246.

Supreme Court of Wyoming.

March 6, 1997 .

L.B. Cozzens of Crowley, Haughey, Hanson, Toole & Dietrich, Billings, for Rick Wilder.

Gary R. Scott of Hirst & Applegate, P.C., Cheyenne, for Cody Country Chamber of Commerce.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN,* and LEHMAN, JJ.

GOLDEN, Justice.

In these cross-appeals we consider whether the district court erred in its several rulings on a motion for judgment as a matter of law filed by the Cody Country Chamber of Commerce (Chamber) following the jury's verdict on former Chamber executive director Rick Wilder's (Wilder) promissory estoppel damages claims arising from the Chamber's termination of his employment. Wilder appeals that part of the district court's judgment which struck the jury's damages awards of $80,000 for loss of business reputation and $6,300 for loss on the forced sale of property. He also appeals the

* Chief Justice at time of oral argument.

district court's evidentiary ruling in the punitive damages phase of the trial which allowed a Chamber representative to testify about a certain aspect of the Chamber's financial status.

The Chamber appeals that part of the district court judgment which upheld the jury's damages award of $134,000 for lost wages in spite of the jury's finding that Wilder was an at will employee at the time of his termination.

We affirm that part of the judgment which struck the business reputation and loss on forced sale of property damages awards. We also affirm the court's evidentiary ruling in the punitive damages phase of the trial. We reverse that part of the judgment which upheld the lost wages award and remand that portion of the judgment to the district court for a determination of the wages and benefits Wilder was entitled to at the time of his termination as an at-will employee.

### ISSUES

In Wilder's appeal, case number 95–245, he presents the issues as:

1. Whether the trial court erred in granting the motion for judgment as a matter of law of the defendant below, Cody Country Chamber of Commerce (hereinafter referred to as the "Chamber") on the jury's award to the plaintiff below, Rick Wilder, for damage to his business reputation, and for loss of business property; and

2. Whether the trial court erred in allowing the Chamber to mislead the jury on the impact of an award for punitive damages in light of the undisputed fact that any such award was covered by insurance, and therefore would not result in a financial hardship to the Chamber.

The Chamber presents similar issues in its brief for case number 95–245:

A. Did the Trial Court err in granting Defendant's Renewed Motion for Judgment as a Matter of Law, as that Motion related to the Jury's award of damages for loss of business reputation, and for loss of property?

B. Did the Trial Court err in allowing the Defendant to present evidence of its financial condition, in defense of the Plaintiff's claim for punitive damages?

In the Chamber's appeal, case number 95–246, the Chamber presents a single issue:

A. Did the Trial Court err in denying in part Defendant's Renewed Motion for Judgment as a Matter of Law, thereby allowing Plaintiff to recover future lost income after being terminated as an at-will employee?

In his brief for case number 95–246, Wilder contends:

The sole issue presented by the cross appeal of the Cody Country Chamber of Commerce (hereinafter the "Chamber") (Case No. 95–246) is whether the trial court erred in refusing to overturn the jury's award to Mr. Wilder of $134,000 for lost wages and benefits resulting from the conduct of the Chamber.

### FACTS

The facts underlying this case are set out in *Wilder v. Cody Country Chamber of Commerce,* 868 P.2d 211, 214–216 (Wyo.1994) (*Wilder I* ). For the convenience of the reader, we repeat the facts relevant to this appeal.

In 1986, Rick Wilder (Wilder) closed his real estate brokerage to accept the position of executive director of the Cody Country Chamber of Commerce (Chamber) in Cody, Wyoming. The Chamber is a nonprofit corporation controlled by a Board of Directors (Board) and a President who serve for terms of office. Wilder considered his employment to be "permanent" for "as long as I did the work that was required." * * *

As the chief administrator for the Chamber, Wilder's duties required that he supervise the Chamber's staff, including the budget manager. The budget manager's duties involved preparation of monthly financial statements and controlling the accounts receivable and accounts payable transactions of the Chamber. During portions of 1987 and 1988, the budget manager failed to pay certain taxes due to the Internal Revenue Service (IRS). The bud-

get manager claimed that periodic cash flow problems prevented the prompt payment of the taxes and other bills.

In late 1988, an IRS agent notified Wilder of the delinquent taxes. Wilder and the budget manager met with the IRS agent in January of 1989 and agreed to a payment schedule. Wilder did not disclose the financial problem to the Board or to the President.

\* \* \* \* \* \*

Eventually, the Board discovered the financial problems and

[o]n March 29, 1989, the Board met with Wilder when he returned to Cody and discussed the Chamber's financial problems. After the meeting, the President presented Wilder with a "memorandum of understanding." Dated March 31, 1989, the memorandum placed limits on Wilder's non-employment related activities. Additionally, the memorandum stated, in pertinent part:

> Your status is probationary through July 1, 1989, or upon completion of an audit of the Chamber books, which may be completed sooner than July 1, 1989. Upon completion of the audit, and the opportunity to review it, the Board will evaluate your status and whether or not to offer you continued employment. The Board reserves the right to consider past employment performance, and review will not be limited to your performance during the probationary period. The Board believes that the entire financial and management picture of Chamber operations should be before them prior to a decision regarding your future employment. In other words, the Board wants all the facts before them, and as such the probationary period is in no way to operate as a waiver of the Board's right to consider performance prior to the probationary period. You are an at will employee, and the Board has the right to terminate at any time for any reason, or for no reason at all. However, we insist on knowing all the facts before any action is taken. Again, you serve at the pleasure of the Board.

\* \* \* \* \* \*

Despite his belief that he was an employee subject to dismissal only for cause, Wilder signed and accepted the terms of the memorandum of understanding on April 4, 1989.

On April 18, 1989, the Board met with Wilder and the budget manager. Board members inquired about the financial problems at the Chamber and when Wilder learned of the delinquent taxes. At the conclusion of the meeting, the Board informed Wilder that he had the option of resigning his position immediately or being terminated the next day. Wilder resigned. It is undisputed that the audit referred to in the memorandum of understanding with Wilder had not yet been completed.

Following his termination, Wilder attempted to secure other employment in Cody. When Wilder was considered for a position with the Park County Travel Council, the Park County Travel Council was informed by the Chamber President that the Chamber could not work with Wilder. The President suggested that a Chamber employee perform the desired work for the Park County Travel Council instead of Wilder. Later, Wilder also sought employment with the Yellowstone Airport Board and presented a marketing proposal. Again, Chamber officials objected to Wilder's employment. The Chamber presented an unsolicited alternative marketing plan that utilized a Chamber employee's services. The Chamber's plan was implemented.

On October 10, 1991, Wilder filed a complaint seeking compensatory and punitive damages from the Chamber. Wilder based his damage claims on several causes of action including: breach of contract; bad faith termination; negligence; intentional infliction of emotional harm; libel and slander; intentional interference with prospective business relations; and negligent interference with prospective business relations. Subsequently, Wilder withdrew the claim for negligent interference with prospective business relations. The Chamber denied the allegations of the complaint and filed a counterclaim seeking

damages for Wilder's negligent breach of his employment duties; breach of his oral, at will, employment contract; and negligent misrepresentation.

On October 26, 1992, the Chamber filed a motion for summary judgment. Three days later, Wilder filed a motion for leave to amend the complaint to bring individual actions against some present and former officers, members of the Board, and employees of the Chamber. Wilder also sought to state additional causes of action against the Chamber, including promissory estoppel, fraud, and negligent misrepresentation.

The district court denied Wilder's motion for leave to amend the complaint and granted summary judgment, on all counts, in favor of the Chamber. * * *

*Wilder I,* 868 P.2d at 214–16.

In *Wilder I,* we reversed and remanded two claims, breach of contract and intentional infliction of emotional distress. *Wilder I,* 868 P.2d at 227. We affirmed summary judgment on the breach of implied covenant of good faith and fair dealing, negligence, defamation and intentional interference with a prospective contractual relationship claims. *Id.* We also held that the district court had abused its discretion in denying Wilder's motion to amend the complaint to add claims of promissory estoppel, fraud and negligent misrepresentation. *Id.* at 226.

In his amended complaint Wilder stated five damages claims. His breach of contract claim alleged "damages for lost wages, past and future and lost benefits...." His promissory estoppel claim alleged "Plaintiff will suffer grave injury if the Chamber is not estopped as hereinabove alleged." His actual and constructive fraud claims alleged damages of "lost wages, past and future, lost fringe benefits, extreme emotional harm, and loss of business reputation...." His claim of intentional infliction of emotional harm alleged entitlement to punitive and exemplary damages. Finally, in his negligent misrepresentation claim, Wilder alleged "damages of lost wages, past and future, lost benefits, severe emotional distress, and loss of business reputation...."

The trial court granted a directed verdict in favor of the Chamber on the actual and constructive fraud claims. During trial, Wilder voluntarily dismissed, with prejudice, his negligent misrepresentation claim. Thus, the case submitted to the jury consisted of claims of breach of contract, promissory estoppel, and intentional infliction of emotional distress. With respect to these remaining claims, Wilder's amended complaint did not seek damages for loss of business reputation or for loss on the forced sale of property.

The trial judge instructed the jury as follows, without objection:

Even if Rick Wilder was an "at will" employee, if the Chamber made a promise or a representation to him which it should reasonably have expected would induce him to change his position, and he did change his position in reliance on the promise or representation, then the promise is binding on the Chamber if injustice can be avoided only by enforcing the promise or representation according to its terms. This is called promissory estoppel.

To recover on his claim of promissory estoppel, Rick Wilder must prove that the promises or the representations made to him constituted a clear and definite agreement. He must also prove that his reliance upon the alleged promise was reasonable under the circumstances.

The judge also instructed the jury as follows concerning damages:

This instruction covers the proper measure of damages; it is given for your guidance in the event you find for Rick Wilder on questions of liability. The fact that I instruct on damages is not an indication of whether or not I think damages are warranted.

Damages must be reasonable. You are not permitted to award speculative damages. If you decide for Rick Wilder on either his claim for breach of contract or promissory estoppel you must fix the amount of money which will reasonably and fairly compensate him for those elements of damages proved by the evidence to have been caused by the Chamber. These damages are referred to as "con-

tract damages." The claimed damages are:

1) Wages and benefits lost through today and those reasonably certain to be lost in the future, less any compensation actually earned by Rick Wilder in the past or reasonably certain to be earned in the future.

2) Loss of business reputation and losses from the forced sale of property, but only if those damages could reasonably have been foreseen by the Chamber.

If you decide for Rick Wilder on his claim for intentional infliction of emotional distress you must fix the amount that will reasonably compensate him for that loss. Such damages are called "tort damages.["] There is no formula I can give your [sic] for the determination of damages for emotional distress. It is not necessary that any witness shall have expressed any opinion as to the dollar amount of such damages. Those damages, if any, should be such sum as will fairly and adequately compensate Rick Wilder. The amount, if anything, rests in your sound discretion and is for you to determine, taking into consideration all of the evidence and your knowledge, observations and experiences in life. The amount should be reasonable and just.

The award of a sum for any specific element of damage should not duplicate the award of damage for any other element. There cannot be double recovery for the same loss even though different theories of liability have been proved. Both "contract damages" and "tort damages" are called compensatory damages. If you decide to award compensatory damages, in considering the amount you are not to concern yourselves with the financial status of the parties. * * *.

Paraphrasing the jury verdict form's special interrogatories, which were approved by the parties, we understand that the jury was instructed essentially as follows: If you find Wilder was an at-will employee after he signed the March 31, 1989, letter, you need not answer the breach of contract interrogatory. Neither party objected to this aspect of the verdict form, although Wilder objected to the form as too complex. The jury found that Wilder was an at-will employee after he signed the March 31, 1989, letter and decided in Wilder's favor on the promissory estoppel, intentional infliction of emotional distress and punitive damages claims.

Under the promissory estoppel claim, the jury awarded the following damages: $134,000 in lost wages and benefits; $6,300 for loss on the forced sale of property;[1] and $80,000 for loss of business reputation. The promissory estoppel claim involved the Chamber's promises to Wilder on March 29, as contained in the March 31 letter, that the Chamber would not take any action on Wilder's employment until after an audit and complete investigation or July 1, 1989, whichever occurred first. The jury awarded $15,000 for intentional infliction of emotional distress and $613 in punitive damages, representing $1.00 for each of 613 Chamber members.

Responding to the Chamber's renewed motion for judgment as a matter of law, the district court struck the jury awards of $80,000 for loss of business reputation and $6,300 for loss on the forced sale of property under the promissory estoppel claim. The district court denied the Chamber's motion on the $134,000 jury award for lost wages and benefits under the promissory estoppel claim. Thus, when the post-trial dust settled, Wilder recovered $134,000 for lost wages and benefits under the promissory estoppel claim; $15,000 for intentional infliction of emotional distress; and $613 for punitive damages associated with the intentional infliction claim.

On appeal, Wilder seeks reinstatement of the jury awards of $80,000 for loss of business reputation and $6,300 for loss on the forced sale of property under his promissory estoppel claim. He also seeks remand of the punitive damages claim, asserting the jury awarded only $613 because the court allowed the Chamber's attorney to improperly examine a Chamber employee/officer about the

---

1. Wilder alleged that because of the Chamber's actions, he was unable to obtain employment and was forced to sell some of his property at a loss.

Chamber's financial situation. On cross-appeal, the Chamber seeks to eliminate the $134,000 jury award for lost wages and benefits, asserting that future income and benefits are improper elements of damages under an at-will employee's promissory estoppel claim.

## DISCUSSION

### Business Reputation Damages

■ The jury awarded business reputation damages under Wilder's promissory estoppel claim. However, Wilder did not seek business reputation damages under his promissory estoppel claim in his amended complaint. Rather, Wilder only asked for business reputation damages under his claims of fraud and negligent misrepresentation. The fraud and negligent misrepresentation claims were not considered by the jury because of the directed verdict on the fraud claim and Wilder's voluntary dismissal of the misrepresentation claim. Wilder did not ask the court to allow him to amend his complaint to conform to the evidence, jury instructions or verdict form.

Relying heavily, if not exclusively, on *Redgrave v. Boston Symphony Orchestra, Inc.,* 855 F.2d 888 (1st Cir.1988), *cert. denied,* 488 U.S. 1043, 109 S.Ct. 869, 102 L.Ed.2d 993 (1989), a breach of contract case and not a promissory estoppel case, Wilder urges us to reverse the district court's judgment as a matter of law that the damage to his business reputation was not a proper contract damage. His reliance on *Redgrave* is misplaced.

The facts in *Redgrave* were these. Actress Vanessa Redgrave sued the Boston Symphony Orchestra (BSO) for consequential damages caused by the BSO's cancellation of the contract for Redgrave's appearance as narrator in the BSO's performance of Stravinsky's "Oedipus Rex." *Redgrave,* 855 F.2d at 891. BSO's cancellation occurred in the wake of its receipt of protests over Redgrave's appearance because of her support of the Palestine Liberation Organization. *Id.* at 890–91. Redgrave's consequential damages claim under her breach of contract theory was not a general claim of damage to reputation. *Id.* at 891. She did not claim that her general reputation as a professional actress had been tarnished by the BSO's cancellation. *Id.* at 893. Instead, she claimed that the BSO's cancellation of her contract proximately caused the loss of several identifiable professional opportunities. *Id.*

In *Redgrave,* the First Circuit Court of Appeals noted the "impressive line of cases" holding that damages for loss of business reputation are not available in contract actions, but explained that this line became less impressive when the court analyzed the reasoning in those cases in light of Redgrave's particular claim. *Redgrave,* 855 F.2d at 892. As a result of the court's review of the sufficiency of the evidence in support of her claim, the court found only one identifiable lost performance proximately caused by BSO's cancellation. *Id.* at 900. The lost fee for that performance was $12,000, from which the court subtracted expenses Redgrave would have incurred had she appeared in the performance. *Id.*

The court explained the distinction between Redgrave's true claim, loss of identifiable professional opportunities, and a general claim of damage to reputation. *Id.* at 892–93. Massachusetts law permits damages for the former type of claim and not for the latter type of claim. *Id.* Two determinative factors support disallowance of reputation damages in a breach of contract action. First, courts have observed the "unduly speculative" nature of attempting to calculate damages for injury to reputation. *Id.* at 892. An estimate of injury to reputation rests upon a number of imprecise variables, including the causal connection between the breach of contract and the injury to reputation and the amount by which any future earnings would be decreased by causes other than the breach. *Id.* (citing *Skagway City School Board v. Davis,* 543 P.2d 218, 225 (Alaska 1975), *overruled on other grounds, Diedrich v. City of Ketchikan,* 805 P.2d 362, 366 (Alaska 1991)). Second, courts have observed that reputation injury damages cannot reasonably be presumed to have been within the parties' contemplation when they contracted. *Id.* at 893. These courts maintain that damages to reputation do not arise naturally from the breach of a contract. *Id.*

We find a portion of the *Redgrave* opinion enlightening and determinative of this issue:

"[I]f plaintiffs proved other employers refused to hire Redgrave after termination of the BSO contract **because of** that termination (that loss of the other employment 'followed as a natural consequence' from the termination of the contract), that this loss of other employment would reasonably have been foreseen by the parties at the time of contracting and at the time of termination, and that damages are rationally calculable, then plaintiffs may be entitled to damages that include monies for loss of the other employment...."

*Redgrave*, 855 F.2d at 893 (quoting *Redgrave v. Boston Symphony Orchestra, Inc.*, 557 F.Supp. 230, 234 (D.Mass.1983) (emphasis added)). Although Wilder argued that he lost some employment opportunities after he was terminated, he did not show that the loss of employment "followed as a natural consequence" from the breach of the Chamber's promise to keep him as a probationary employee until an audit was performed or until July 1, 1989, whichever occurred first.

Wilder applied for and was qualified to perform jobs for the Park County Travel Council, the Yellowstone Airport Board and the American Rockies Program through the Wyoming Division of Tourism. He claims that his failure to get those jobs was the result of the Chamber's breach of its promise. However, the record, including Wilder's own amended complaint, shows that the Chamber's actions **subsequent** to Wilder's termination were responsible for the denial of those specific job opportunities, not the breach of the Chamber's promise to keep him as a probationary employee until an audit was performed or until July 1, 1989. Wilder's lost employment opportunities did not follow as a natural consequence of the Chamber's failure to keep its promise. In *Wilder I* and during the trial, Wilder's claims against the Chamber for its actions following his termination (interference with prospective contractual relationships, defamation, breach of implied covenant of good faith and fair dealing, negligence and negligent misrepresentation) were dismissed. The district court properly ruled as a matter of law that

Wilder's business reputation damages were not proper under a breach of contract/promissory estoppel theory.

■ Alternatively, Wilder also urges us, as he did the district court, to hold that if damages for injury to his business reputation are not proper under his promissory estoppel claim, they should be allowed under his intentional infliction of emotional distress claim. This argument is without merit. The RESTATEMENT (SECOND) OF TORTS § 46 states: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability **for such emotional distress**...." *Leithead v. American Colloid Co.*, 721 P.2d 1059, 1065 (Wyo.1986) (emphasis added). Wilder did not present any evidence to the jury that the injury to his business reputation was caused by emotional distress. Wilder's emotional distress damages are limited to "such emotional distress" as was caused by the Chamber's extreme and outrageous conduct. While loss of business reputation may cause emotional distress, it is not emotional distress in and of itself and is not a separate emotional distress injury.

Wilder relies on *Havens v. Tomball Community Hosp.*, 793 S.W.2d 690, 691 (Tex.Ct. App.1990), to argue that the court should not limit the damages recoverable for the tort of intentional infliction of emotional distress. His reliance on this case is ill-founded. *Havens* reversed a summary judgment for the employer defendants, finding the employee plaintiff alleged an intentional infliction of emotional distress claim separate and independent from her wrongful discharge claim. *Id.* at 692. *Havens* did not have occasion to determine whether business reputation damages were appropriate in an intentional infliction of emotional distress claim. Rather, the court merely found that allegations of harsh treatment and rumors circulated about the plaintiff *before* her discharge met the elements for an intentional infliction of emotional distress claim. *Id.*

Wilder cannot recover reputation damages or emotional distress damages for his discharge in breach of the Chamber's promise; therefore, to be recoverable at all, those damages must stem from the conduct of the

Chamber after his termination. The jury awarded Wilder $15,000 for emotional distress damages for the Chamber's post-termination conduct. It strikes us that Wilder is seeking a double recovery for emotional distress. This the law does not allow.

*Property Loss Damages*

 Wilder cannot recover, under the promissory estoppel theory, damages for loss incurred because he was forced to sell his property for the same reasons he cannot recover for injury to his business reputation under that theory. The loss was not caused by the Chamber's breach of its promise not to take any action until an audit was completed or until July 1, 1989, whichever occurred first. Rather, the loss was experienced long after the Chamber's termination of Wilder as a result of the Chamber's post-termination actions which allegedly kept him underemployed and unemployed.

 Wilder's argument that his damages for loss on the forced sale of property should be upheld under his intentional infliction of emotional distress claim is also without merit. While the loss on the forced sale of his property may cause some emotional distress, we must assume the jury took that into account in its $15,000 intentional infliction of emotional distress damage award. Loss on the forced sale of property is not proper as an emotional distress damage award and Wilder did not argue that the loss was caused by his emotional distress.

*Lost Income Damages*

The Chamber appeals from the district court's denial of its renewed motion for judgment as a matter of law concerning the lost future income damages under Wilder's promissory estoppel claim. Although this Court has under appropriate circumstances invoked equitable principles to avoid injustice, our most recent cases demonstrate that this Court deems it wise to place safeguards on the application of the doctrine of promissory estoppel. *B & W Glass, Inc. v. Weather Shield Mfg., Inc.,* 829 P.2d 809, 818–19 (Wyo. 1992) (citing *Inter–Mountain Threading, Inc. v. Baker Hughes Tubular Services, Inc.,* 812 P.2d 555, 559 (Wyo.1991)); *Provence v. Hilltop National Bank,* 780 P.2d 990, 993 (Wyo.1989).

 "In future wages, the employee has only an expectation of income, the recovery of which promissory estoppel will not support in an at-will employment setting." *D & G Stout v. Bacardi Imports, Inc.,* 923 F.2d 566, 569 (7th Cir.1991). "The doctrine of promissory estoppel may be available to an at-will employee, but the remedy is limited to damages actually resulting from the detrimental reliance . . . ."[2] *Jarboe v. Landmark Community Newspapers,* 644 N.E.2d 118, 122 (Ind.1994). "Promissory estoppel requires the party invoking the doctrine to have acted reasonably in justifiable reliance on the promise that was made . . . ." *Loghry v. Unicover Corp.,* 927 P.2d 706, 711 (Wyo.1996) (quoting *Chavez v. Manville Products Corp.,* 108 N.M. 643, 777 P.2d 371, 374 (1989)). "There 'can be no estoppel as a matter of law when the asserted reliance is not justifiable or reasonable under the circumstances of the case considered as a whole.' " *Id.* (quoting *Davis v. Davis,* 855 P.2d 342, 348 (Wyo.1993); *Roth v. First Security Bank,* 684 P.2d 93, 97 (Wyo.1984)).

 The March 31, 1989, letter, upon which Wilder claims he relied, stated that Wilder was an at-will employee, but the Chamber would not take any action until it performed an audit or July 1, 1989. At trial, Wilder admitted his understanding of the agreement was that the Chamber would not take action until the audit or July 1, 1989, whichever occurred first.

**2.** Although we have not yet determined if promissory estoppel applies in the at-will employment context, promissory estoppel is the law of this case. *Loghry v. Unicover Corp.,* 927 P.2d 706, 710; *Garcia v. UniWyo Federal Credit Union,* 920 P.2d 642, 647 (Wyo.1996). We decline here to determine definitively whether promissory estoppel applies in the at-will employment context, in part because it is the law of this case and in part because the parties have not briefed or argued the issue. We prefer not to decide an issue which has not been argued or briefed. We will wait for a properly briefed appeal to determine this important issue. Consequently, much of our discussion is necessarily limited to this case, its facts and the law as given to the jury in its jury instructions.

The jury awarded Wilder $134,000 for lost future income. We note the jury was instructed to award contract damages if it found promissory estoppel applied. With respect to either a contract theory or promissory estoppel theory and the damages available under those theories, Wilder's claim for lost income damages incurred after July 1, 1989, is not reasonable. Based on the language in the letter and Wilder's understanding of the letter, Wilder could not reasonably expect to be employed by the Chamber after July 1, 1989, nor could he reasonably claim reliance on the Chamber's promise entitled him to employment after that date.

The trial court was correct when it commented that it felt the jury made an "error in legal reasoning" in awarding the $134,000 damage award to Wilder on the promissory estoppel claim. The trial court should have granted the judgment as a matter of law to the extent the award represented damages for lost wages and benefits after July 1, 1989.

The promise the jury found the Chamber breached, and which the Chamber and Wilder appear to concede, was that the Chamber would not take action until either an audit or July 1, 1989, whichever occurred first. For that specific period of time, Wilder could reasonably rely on that promise and forbear from seeking other employment. Generally, a wrongfully discharged employee is entitled to the agreed upon salary for the unexpired term of his employment. *Fogleman v. Peruvian Associates*, 127 Ariz. 504, 622 P.2d 63, 65 (Ct.App.1980), *overruled on other grounds, Fleming v. Pima County*, 141 Ariz. 149, 685 P.2d 1301, 1308 (1984), (citing 5 A. CORBIN, CORBIN ON CONTRACTS § 1095 (1964)). It is therefore appropriate to allow reliance damages for the salary and benefits Wilder would have received until July 1, 1989, thereby placing Wilder in the position he would have been in had the Chamber kept its promise. *See Panhandle Eastern Pipe Line Co. v. Smith*, 637 P.2d 1020, 1025 (Wyo. 1981); *Burch v. Lake Forest Property Owners' Ass'n*, 565 So.2d 611, 612 (Ala.1990); *Curacare, Inc. v. Pollack*, 501 So.2d 470, 472 (Ala.Civ.App.1986). We hold that as a matter of law those damages are due to Mr. Wilder. Therefore, we remand that portion of the judgment to the district court for a determination of the salary and benefits due Wilder from the date of his forced resignation, April 18, 1989, until July 1, 1989.

*Punitive Damages Evidence*

Wilder claims the trial court erred when it allowed the Chamber to elicit testimony concerning the Chamber's financial condition. Wilder argues that the testimony misled the jury into thinking the Chamber would have to close its doors if the jury awarded a large punitive damages award, in spite of the fact that the Chamber has an insurance policy to cover any punitive damages award by the jury.

Decisions concerning the admissibility of evidence are within the discretion of the trial court. *Furman v. Rural Electric Co.*, 869 P.2d 136, 140 (Wyo.1994); *Haderlie v. Sondgeroth*, 866 P.2d 703, 712 (Wyo.1993). We will not disturb a decision within the discretion of the trial court absent a clear abuse of discretion. *Id.* A trial court commits an abuse of discretion if it acts outside the bounds of reason or commits an error of law. *State Farm Mutual Auto. Ins. Co. v. Shrader*, 882 P.2d 813, 829 (Wyo.1994).

Wilder opened the door regarding the Chamber's financial status in the punitive damages phase of the trial when he asked Paul Hoffman, Executive Director of the Chamber, about its operating budget and the number of Chamber members. The Chamber merely walked through that door on cross-examination by asking Mr. Hoffman more questions concerning the Chamber's financial status. Wilder objected to the line of questioning, indicating the jury was being misled by the testimony because the Chamber had punitive damages insurance. After discussion concerning the purpose of punitive damages, the effect of insurance coverage for punitive damages and the nonprofit nature of the Chamber, the district court stated:

> [T]ypically, all of that information would be relevant as to what assets and what kind of budget the Chamber has. All of those things would be relevant in a typical punitive damage case. So, I guess, what I'm going to have to do is just approach it as if

there was no insurance. I don't know if that's the right approach, but it's the only logical approach they can follow. We just approach it as if there was no insurance. I'll let you ask the questions, let you put on whatever evidence you want to put on. You can argue it, and we'll let them decide.

Following the Chamber's cross-examination, Wilder did not ask Mr. Hoffman any questions on re-direct. In sum, Wilder invited questions concerning the Chamber's financial status and objected when the Chamber elicited testimony favorable to it. Wilder argues the jury was misled, but did not attempt to elicit on re-direct information concerning whether the Chamber had insurance, which would have been proper rebuttal evidence for Hoffman's statements concerning the Chamber's "very tight budget." *See Wheeler v. Murphy*, 192 W.Va. 325, 452 S.E.2d 416, 424 (1994) (Evidence of insurance is admissible when offered on rebuttal as a financial asset and not offered for purpose of determining liability. Such evidence should be considered by the jury as a relevant financial asset in awarding punitive damages.). The trial court did not abuse its discretion when it allowed the Chamber to elicit financial condition testimony and was not given the opportunity to rule on the admissibility of the insurance information which would have painted for the jury the entire picture of the Chamber's ability to pay punitive damages. We therefore affirm the trial court's ruling to admit the financial condition testimony given by Mr. Hoffman.

### CONCLUSION

■ The determination of damages under a claim of promissory estoppel is a question of law for the court, not the jury, to decide. The breach of the Chamber's promise to refrain from taking action against Wilder before performing an audit or July 1, 1989, whichever occurred first, resulted in the premature, and therefore wrongful, termination of Wilder. Wilder's business reputation damages and damages for loss on the forced sale of property were not caused by the Chamber's failure to keep its promise. We affirm the district court's judgment as a matter of law disallowing Wilder's business repu-

tation and property loss damages. Wilder could not reasonably expect continued employment after July 1, 1989, under the terms of the memorandum upon which he relied. We reverse the district court's denial of the Chamber's renewed motion for judgment as a matter of law concerning Wilder's future income and benefits damages and remand the case for a determination of those damages which resulted from the breach of the Chamber's promise to refrain from acting until July 1, 1989. Finally, we affirm the district court's evidentiary ruling that information concerning the Chamber's financial condition was admissible evidence in the punitive damages phase of the trial.