Monica E. FLEEGEL, Appellant/Cross–Appellee,

v.

ESTATE OF Michael E. BOYLES, Appellee/Cross–Appellant.

Nos. S–9091, S–9441.

Supreme Court of Alaska.

Nov. 15, 2002.

Rehearing Denied Feb. 10, 2003.

Wm. Grant Callow, Law Offices of Wm. Grant Callow, APC, Anchorage, for Appellant and Cross–Appellee.

Paul W. Waggoner, Law Offices of Paul W. Waggoner, Anchorage, for Appellee and Cross–Appellant.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

Monica Fleegel sought compensatory and punitive damages from a drunk driver, Michael Boyles,[1] who injured her in a car accident. The jury awarded Fleegel compensatory damages, but although it found that punitive damages were warranted, it made no monetary award for punitive damages. On appeal Fleegel appeals a number of the trial court's evidentiary rulings, and Boyles cross-appeals the trial court's award of attorney's fees to Fleegel. Because the trial court did not abuse its discretion in its evidentiary rulings and because it appropriately concluded that although Fleegel was not the prevailing party, she was entitled to attorney's fees under the crime victims' statute, we affirm the trial court's judgment.

## II. FACTS AND PROCEEDINGS

### A. Facts

Shortly after 5:00 p.m. on September 1, 1995, Monica Fleegel sat in her car waiting for the light to turn green at the intersection of 36th Avenue and Denali Street in Anchorage. Before the light changed, Fleegel's car was hit by a pick-up truck driven by Michael Boyles. Boyles failed to stop at the accident scene.

After the collision Fleegel felt pain in her nose, head, neck, chest, back, and hand. All of the injuries ultimately healed except for the injury to Fleegel's left hand. As a result of the collision, the tendon of Fleegel's left wrist pulled off its attachment to the thumb, taking bone with it and causing an avulsion fracture. Fleegel's orthopedic surgeon testified that such injuries can result in long-term pain associated with certain activities. In the intervening years since the collision, Fleegel has undergone a variety of treatments for her injury. She has received injections of anti-inflammatory medication, had a cast on her arm for three weeks, and has worn splints for varying periods of time almost every day since the accident. Long-

---

1. Michael Boyles passed away after this appeal was filed. We granted Fleegel's motion to substitute Boyles's estate as the appellee/cross-appel-

lant, but we will continue to refer to "Boyles" throughout the opinion.

term treatment of the injury involves wearing a splint and taking anti-inflammatory medication. Fleegel has also been advised that the injury leaves her at increased risk for premature arthritis in the joint.

Fleegel used approximately forty-two hours of sick leave during her initial recovery from the collision. The parties stipulated that she incurred $5,417 in medical expenses, which State Farm Mutual Automobile Insurance Company, insurer of both Fleegel and Boyles, paid.

Boyles admitted that he was under the influence of alcohol and Valium at the time of the collision. Boyles participated in alcohol treatment programs in the years both before and after the collision. He also had a medical history that included an anxiety disorder, panic attacks, depression, post-traumatic stress disorder, and various gastrointestinal disorders related to alcoholism.

After the accident, the Municipality of Anchorage charged Boyles with leaving the scene of an injury accident and reckless driving. Boyles pleaded no contest to the charges. As part of his sentence, Boyles was required to complete treatment recommended by the Anchorage Alcohol Safety Action Program (ASAP). Seven months after the collision with Fleegel, Boyles was again charged with driving while intoxicated. He claimed to have stopped driving after that incident.

### B. *Proceedings*

Fleegel filed suit against Boyles seeking compensatory and punitive damages. Boyles admitted liability and acknowledged that "consumption of alcohol was one of the causes of this accident."

Fleegel filed a motion in limine requesting that all references to insurance "be deleted" from the evidence at trial, or, in the alternative, that all potential jurors insured by State Farm Insurance be excused for cause. The superior court ruled that because Boyles's insurance coverage had relevance to punitive damages it could be discussed, but that the name of the company providing the insurance could not be mentioned.

Fleegel also sought to introduce as evidence at trial an outstanding warrant against Boyles for failure to comply with ASAP requirements. The trial court deemed the warrant inadmissible.

Boyles planned to present at trial a videotaped deposition of Dr. James Peach, a gastroenterologist who treated Boyles in the two years prior to trial. Fleegel sought to exclude Dr. Peach's testimony on the ground that it was irrelevant. Fleegel also sought to exclude medical records relied upon and discussed by Dr. Peach during his testimony. The trial court overruled Fleegel's objections to Dr. Peach's testimony, finding Dr. Peach's discussion of Boyles's alcoholism relevant to social standing and financial condition as they related to the punitive damages claim. Moreover, the trial court determined that Dr. Peach's reference to the medical records of other doctors was permissible because these records formed the foundation for Dr. Peach's opinion. But the trial court agreed with Fleegel that the "actual packet of records that were included in the deposition" should not be admitted. Fleegel later sought to present two records of other physicians who had treated Boyles, which were contained in Dr. Peach's file. The trial court denied that request.

The case was tried before a jury on December 14–17, 1998. Other than a statement by Boyles's attorney during voir dire that he had been retained by Boyles's insurance carrier to represent Boyles, no mention or evidence of Boyles's insurance coverage was made during trial. On the stipulation of the parties, the trial court did give a jury instruction stating that Boyles "has insurance coverage."

Prior to beginning deliberations, a juror asked: "are ... punitive damages direct[ed] to Mr. Boyles or to the insurance company?" The court responded: "I cannot give you a direct answer to that question. No evidence [of insurance] was presented regarding what items of damage may be covered by Mr. Boyles's insurance. Therefore, you may not speculate whether any particular item of damage is covered by insurance."

The jury returned a special verdict finding that (1) the negligence of Boyles was a legal

cause of injury to Fleegel; (2) Fleegel suffered damages in these amounts: $1,140 in past economic loss, $7,500 in past non-economic loss, $1,000 in future economic loss, and $3,500 in future non-economic loss—for a total of $13,140 in damages; (3) punitive damages should be awarded against Boyles; and (4) the amount of punitive damages awarded against Boyles should be zero.

Because Boyles made a Rule 68 offer of judgment that substantially exceeded the jury award, the trial court determined that Boyles was the prevailing party, and awarded him $6,000 in attorney's fees, $1,990.71 in costs, and $50 in expert witness fees. After subtracting Boyles's award of $8,040.71 from Fleegel's compensatory damages award of $14,703.40, the trial court entered judgment for Fleegel for $6,662.29.

Fleegel moved for Civil Rule 60(b)[2] relief from the judgment on the basis of AS 09.60.070, which awards "full reasonable attorney fees" to victims of certain crimes, including driving while intoxicated.[3] The trial court granted Fleegel's motion and ultimately determined that both parties were entitled to attorney's fees-Boyles for making a pretrial settlement offer more generous than the jury award,[4] and Fleegel as the victim of a serious crime. Accordingly, the trial court added one-third of Fleegel's net recovery of $6,662.29 ($2,220.90) to compensate Fleegel for her attorney's fees[5] under the crime victims' statute, AS 09.60.070, yielding a total judgment in favor of Fleegel of $8,883.59 ($6,662.29 plus $2,220.90). The trial court entered amended judgments on September 27, 1999 and January 31, 2000.

Fleegel appeals a number of the trial court's evidentiary rulings. Boyles cross-appeals the attorney's fees award to Fleegel under the crime victims' statute, AS 09.60.070.

### III. STANDARD OF REVIEW

We review a trial court's decision to admit or exclude evidence for abuse of discretion.[6] Decisions about the admissibility of evidence are committed to the sound discretion of the trial court.[7] We will only reverse evidentiary rulings if upon review of the record as a whole we are left with the definite and firm conviction that the trial court erred in its ruling and the error affected the substantial rights of a party.[8]

Boyles's cross-appeal requires this court to interpret AS 09.60.070. As we have stated, "[t]he independent judgment standard of review is exercised by this court when the interpretation and application of a statute is at issue,"[9] and "[t]he interpretation of a statutory provision . . . is a question of law [that we resolve] by adopting 'the rule of

---

**2.** Civil Rule 60(b) permits a court to relieve a party from a final judgment for reasons including mistake, inadvertence, and excusable neglect.

**3.** AS 09.60.070 provides attorney's fees for victims of serious criminal offenses:

(a) A person who has been injured or damaged, or the estate of a person who has died, may recover from the offender full reasonable attorney fees in a civil action or a wrongful death action if the injury, damage, or death resulted from

(1) an attempt on the part of the person to prevent the commission of a serious criminal offense or to apprehend an offender who has committed a serious criminal offense, or aiding or attempting to aid a police officer to do so, or aiding a victim of a serious criminal offense; or

(2) the commission or attempt on the part of the offender to commit a serious criminal offense.

Under this statute, a serious criminal offense includes driving while intoxicated. *See* AS 09.60.070(c)(14).

**4.** *See* discussion of the applicable law to the "prevailing party" determination *infra* notes 35 & 43.

**5.** The trial court reasoned that because Fleegel had a one-third contingency fee agreement with her counsel, the award of $2,220.90, as one-third of $6,662.69, constituted a full fee award under AS 09.60.070.

**6.** *Bliss v. Bobich,* 971 P.2d 141, 144 n. 3 (Alaska 1998).

**7.** *Dobos v. Ingersoll,* 9 P.3d 1020, 1023 (Alaska 2000).

**8.** *Id.*

**9.** *Deal v. Kearney,* 851 P.2d 1353, 1356 n. 4 (Alaska 1993).

law that is most persuasive in light of precedent, reason, and policy.' "[10]

## IV. ARGUMENT

### A. The Trial Court Did Not Err in Its Evidentiary Rulings.

1. *The trial court did not err in admitting evidence of insurance coverage without reference to the insurance carrier's name.*

Fleegel's motion in limine requested that the trial court either direct that no references to insurance be made in exhibits and evidence, or excuse for cause all potential jurors who were insured by Boyles's insurance carrier, State Farm. Fleegel cited concern that evidence of insurance would improperly influence jurors, who might fear that a high punitive damages award would raise their own insurance rates.

The superior court declined both of Fleegel's requests. However, the court did rule that the parties could not mention the name of Boyles's insurance carrier, State Farm. Fleegel appeals the denial of both of her requests.

a. *The superior court did not err in denying the motion to exclude evidence of insurance coverage.*

■ The trial court ruled that insurance had relevance to Boyles's financial condition as it related to punitive damages and declined to prohibit evidence of insurance coverage. The trial court explained its reasoning: "[E]ven if the insurance ... only covers the compensatory damages, it goes to the issue of the defendant's financial condition."[11] The trial court further determined

that evidence of insurance coverage would not improperly influence the jurors: "I disagree ... that jurors will speculate as to whether it's their insurance or not and whether their rates will be affected by what they do." The trial court also ruled that the parties could not mention the name of the insurance carrier, State Farm. Fleegel argues on appeal that these rulings constituted prejudicial error.

■ The financial condition of a party is a relevant factor in considering a claim for punitive damages. In *Sturm, Ruger & Co. v. Day*, we recognized that the wealth of a defendant is an important factor that bears on the amount of punitive damages.[12] We also applied this factor in our analysis of the appropriateness of the punitive damages award in *Norcon v. Kotowski*.[13] Furthermore, the Alaska Legislature established in a subsequently enacted statute, not applicable to this case but still informative, that the trier of fact may consider the financial condition of the defendant when determining the amount of punitive damages.[14]

In *Shane v. Rhines*, all five justices of this court, in majority, concurring, and dissenting opinions, agreed that insurance coverage in particular was relevant to a determination of a punitive damages award.[15] Two members of the majority stated that "evidence of insurance arguably is relevant to the appropriate measure of punitive damages," but concluded that the trial judge's decision to exclude insurance evidence was harmless error because the jury ultimately found no liability for punitive damages.[16] Justice Compton, in a concurring opinion, advocated for the use of bifurcated trials in cases involving a claim for punitive damages.[17] He

---

10. *Sauve v. Winfree*, 985 P.2d 997, 999 (Alaska 1999) (quoting *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

11. It appears that Boyles's policy may, in fact, have covered punitive damages. Counsel for Boyles stated at the pretrial conference that "[m]y position is that there is [insurance coverage for punitive damages]. There's no specific exclusion in the policy for punitive damages."

12. 594 P.2d 38, 48 (Alaska 1979), *overruled on other grounds by Dura Corp. v. Harned*, 703 P.2d 396, 405 n. 5 (Alaska 1985).

13. 971 P.2d 158, 175–76 (Alaska 1999).

14. *See* AS 09.17.020(c)(6).

15. 672 P.2d 895 (Alaska 1983).

16. *Id.* at 899–900.

17. *Id.* at 902 (Compton, J., concurring).

noted that at the second phase of the trial, "the needed evidence of the defendant's wealth, including evidence of any insurance coverage, could be presented."[18] And Justices Burke and Matthews noted in their dissent that "[a] defendant's insurance policy is a part of his financial resources and will obviously affect the degree to which a defendant is punished by a punitive damage award."[19]

A number of courts permit insurance evidence to rebut a defendant's attempt to portray himself as too poor to pay an award of punitive damages.[20] These cases stem from the *plaintiff's* attempt to introduce the defendant's ability to pay because of his insurance.[21] In this case, defendant Boyles wanted evidence admitted of his insurance coverage. A review of decisions in other jurisdictions indicates that no court has held that introduction of insurance evidence is reversible error because it is prejudicial to a plaintiff, as Fleegel argues.

Also, Alaska Evidence Rule 411 does not require reversal of the superior court's ruling. Fleegel argues that evidence of liability insurance, even if it is relevant, is generally inadmissible under Evidence Rule 411. But Rule 411 establishes that evidence of liability insurance "is not admissible *upon the issue whether the person acted negligently* or otherwise wrongfully." (Emphasis added.) Rule 411 "does not require the exclusion of evidence of insurance against liability when offered for another purpose."[22] Liability was not contested in this case; Boyles admitted liability. The trial court focused on the relevance of insurance to Boyles's financial

condition, a purpose not excluded under Rule 411. Therefore, the trial court did not err in failing to exclude evidence of insurance coverage.

### b. *The superior court did not err in refusing to exclude all jurors who carried State Farm insurance.*

■ Fleegel alternatively sought, if the court permitted evidence of insurance, to exclude all jurors who carried State Farm insurance. The trial court denied Fleegel's request and ruled that "there won't be any mention of the name of the company providing the coverage, and you can voir dire on insurance questions, but no one can mention State Farm." Fleegel appeals this ruling, arguing that even if an award has little or no actual effect on insurance rates, the jurors' perception that they have a financial interest in the outcome of the case unfairly prejudiced them against an award of punitive damages.

On appeal Fleegel suggests that at least four members of the jury demonstrated during voir dire concern about insurance rates rising because of lawsuit verdicts. Fleegel did not, however, challenge these jurors for cause on the grounds of either bias[23] or preexisting opinions as to what the outcome should be.[24] Fleegel also did not use a peremptory challenge to remove any of these four jurors.

■ Whether a juror is dismissed for cause is within the discretion of the trial

---

**18.** *Id.* (Compton, J., concurring).

**19.** *Id.* (Burke and Matthews, J., dissenting).

**20.** *E.g., Humana Health Ins. Co. of Florida, Inc. v. Chipps*, 802 So.2d 492, 497–98 (Fla.App.2001) (holding that trial court correctly admitted evidence of indemnity agreement to rebut defendant's assertions that a large punitive damages award would force the company into financial straits); *Wheeler v. Murphy*, 192 W.Va. 325, 452 S.E.2d 416, 424 (1994) ("A defendant's net worth is relevant to the issue of punitive damages, and in this case, where defense counsel offered evidence of Mr. Murphy's meager finances, the plaintiff's rebuttal evidence disclosing the existence and policy limits of Mr. Murphy's liability insurance is not barred by either [West Virginia Rules of Evidence] 401–03 or Rule 411."); *Wil-*

*der v. Cody Country Chamber of Commerce*, 933 P.2d 1098, 1108 (Wyo.1997) (holding that trial court did not err in admitting evidence of defendant's inability to pay punitive damages where plaintiff failed to elicit on re-direct information concerning whether defendant had insurance, which would have been proper rebuttal evidence).

**21.** *See* cases cited *supra* note 20.

**22.** Alaska R. Evid. 411.

**23.** *See* Alaska R. Civ. P. 47(c)(2).

**24.** *See* Alaska R. Civ. P. 47(c)(3).

court.[25] The trial court here carefully considered whether a potential juror's insurance carrier had relevance to any conflict of interest. It noted that most jurors know that there is insurance in liability cases, but that common practice dictates that "we don't inquire ... who the carrier is and excuse those jurors." Moreover, Fleegel has not shown that any prejudice occurred as a result of the ruling.[26] We therefore find no error.

The dissent argues that our holding today contradicts our rulings in *Malvo v. J.C. Penney Company, Inc.*[27] and *Reich v. Cominco Alaska, Inc.*[28] These cases stand for the proposition that jurors who fall within certain Civil Rule 47(c) categories must be dismissed for cause. Specifically, in *Reich*, we recently held that there is a "per se rule allowing challenges for cause of prospective jurors with a financial interest in the litigation."[29] The dissent posits that State Farm insureds have a financial interest in the present case. We disagree for two reasons: (1) the jurors who had State Farm insurance only had an indirect financial interest in the litigation, and (2) they were unaware of any possible financial interest in the litigation.

In *Reich*, we discussed whether indirect financial interest was sufficient to disqualify jurors under Civil Rule 47(c). *Reich* held that a trial court must dismiss from the jury pool stockholders of companies that have direct financial interests in the outcome of the litigation, even if the companies are not actual parties to the litigation.[30] *Reich* also discussed *Harmotta v. Bender.*[31] The challenged jurors in *Harmotta* were members of

the Roman Catholic Church, and the case involved a Roman Catholic parish in the same diocese as the potential jurors.[32] We distinguished Harmotta from *Reich* by stating that "there was only a possibility church members would be called on to reimburse the church."[33] The same is true in this case.

If the jury returned a punitive damages award against Boyles, State Farm insureds would only have a possibility of bearing a cost, and that cost would be minimal. Insurance premiums already take into account that trials will subject some insureds to significant damages awards, so a damages award would not automatically raise all insureds' premiums. The financial interest that State Farm insured jurors have in this case is speculative at best. Furthermore, unlike the situations in *Reich* and *J.C. Penney*, where the jurors knew that J.C. Penney and NANA were parties affected by the suits, State Farm insureds did not know that State Farm was involved or might be affected by this lawsuit. As a result, we cannot agree with the dissent's assessment that Civil Rule 47(c) required State Farm insureds to be dismissed for cause from the jury pool.

The dissent also contends that if Civil Rule 47(c) requires the exclusion from juries of persons with financial interest, then the trial court must inquire into those financial interests. We agree that a trial court must inquire about any financial interest known to a juror. We do not agree, however, that the trial judge must make known to a juror an unknown financial interest in the litigation.

---

25. See *Dalkovski v. Glad*, 774 P.2d 202, 205 (Alaska 1989) ("The grounds listed in Rule 47(c)(2), (3), and (4), which approximate juror personal knowledge of facts of the case, involve value judgments by the trial court and are committed to the trial court's discretion."); *Mitchell v. Knight*, 394 P.2d 892, 897 (Alaska 1964) ("We shall interfere with the exercise of [a trial judge's] discretion [in the determination of challenges for cause] only in exceptional circumstances and to prevent a miscarriage of justice.").

26. Although the jury returned a figure of zero for the amount of punitive damages after determining that punitive damages were warranted, Fleegel did not challenge the verdict as inconsistent and she has not raised this point on appeal.

27. 512 P.2d 575 (Alaska 1973).

28. 56 P.3d 18, (Alaska 2002).

29. *Id.* at 18.

30. *Id.* at 23 ("We now extend *Noey* and hold that the per se rule that excludes as jurors stockholders in a company which is a party to the litigation also applies to stockholders in a corporation which is not a party but which is nonetheless *financially interested in the outcome.*").

31. 411 Pa.Super. 371, 601 A.2d 837 (1992).

32. *Id.* at 838.

33. *Reich v. Cominco Alaska, Inc.*, 56 P.3d 18, at 24 (Alaska 2002).

We note that the dissent cites no authority to support the contention that courts must inform jurors of potential financial interests of which the jurors are unaware.

2. *The trial court did not err in excluding evidence of Boyles's outstanding arrest warrant.*

The district court issued a warrant on July 16, 1998, to arrest Boyles for failure to comply with ASAP requirements. Fleegel sought to introduce this warrant as evidence at trial. Fleegel's offer of proof provided the following reasons for seeking admission of the warrant: (1) to impeach Boyles by showing that his probation had in fact been revoked, and (2) to demonstrate why Boyles was not in court at trial on December 15, 1998. The trial court ruled that evidence of the warrant was not admissible, reasoning that the evidence had only a tenuous connection with material issues in this case and was not probative of why Boyles was not present at trial. The court also determined that even if the evidence was minimally probative, it would waste time and generate confusion about the details of enforcing alcohol treatment orders.

Even without evidence of the warrant, Fleegel was able to adduce evidence and make the arguments that no evidence existed that Boyles actually was in a recovery program; that Boyles had lied in the past about his participation in a treatment program; and that Boyles had engaged in manipulation to avoid having the full brunt of his criminal sanctions imposed.

The trial court did not abuse its discretion, and the ruling did not substantially impair Fleegel's rights. We therefore find no error.

3. *The trial court did not err by admitting the testimony of Boyles's gastroenterologist.*

At trial Boyles presented the videotaped deposition of Dr. David Peach, a doctor who specializes in gastroenterology-diseases of the stomach, intestines, and liver. Dr. Peach testified about his treatment of Boyles and the medical records that he received from other physicians and alcohol treatment facilities regarding Boyles.

Fleegel objected to the foundation of Dr. Peach's testimony, its relevance, and Dr. Peach's competency to testify regarding issues of the case, particularly given that he specializes in gastroenterology rather than psychiatry or psychology. The trial court overruled Fleegel's objections, determining that the testimony had relevance and that an adequate foundation had been provided. It explained its reasons for this ruling:

This is a punitive damage case and the defendant's social standing and financial condition are relevant to a punitive damage case. All of Dr. Peach's testimony regarding the defendant's alcoholism is relevant to those issues, social standing and financial condition. There's an adequate foundation for Dr. Peach to testify regarding those issues: he treated the defendant for alcoholism and he participated in proceedings to have the defendant committed to a hospital for further treatment.

The trial court also allowed Dr. Peach's references to Boyles's other medical providers because these records formed a partial basis for Dr. Peach's opinions.

In addition to the relevancy, foundation, and competency arguments made at trial, on appeal Fleegel argues that this evidence had an unfair effect by distracting the jurors and generating undue sympathy for Boyles. She alleges that Boyles used Dr. Peach's testimony improperly to present inadmissible hearsay and other inappropriate information to the jury.

The trial court did not abuse its discretion in determining that Dr. Peach's testimony was relevant to the issues of Boyles's social standing and financial condition. Dr. Peach testified regarding Boyles's "inability to function as a reasonable human in society" as a health consequence of his alcoholism. Moreover, Dr. Peach presented some evidence related to Boyles's financial condition, including a hospital admission form that listed Boyles's occupation as "disabled" and the nature of Boyles's medical problems from which the jury could reasonably infer that Boyles could not work. The trial court did not err in determining that Dr. Peach's testimony was relevant to Boyles's social standing

and financial condition as they related to the punitive damages claim.

4. *The trial court did not commit reversible error by excluding from evidence other medical records contained in Dr. Peach's file.*

 Fleegel successfully prevented the admission at trial of Boyles's actual medical records, even though these records were used as exhibits during Dr. Peach's video deposition. But later during trial, Fleegel sought to supplement her exhibits with other of Boyles's medical records contained in Dr. Peach's file, which the doctor had not referred to during the deposition. The documents that Fleegel wished to admit concerned Boyles's medical condition near the time of the collision and his refusal to enter alcohol treatment programs.

The trial court ruled that Fleegel could not supplement her exhibits with the medical records in the absence of a witness providing an explanation and foundation for the records. It also found that "[t]hose records could have been discussed during Dr. Peach's deposition and, had they been discussed, they likely would have been ... admitted." Additionally, it determined that Fleegel was not significantly prejudiced by the exclusion of these records because other evidence in the record supported the points for which Fleegel wanted the records presented.

Any error in excluding the medical records was harmless because, as the trial court observed, Fleegel was able to show through other evidence that Boyles did not cooperate in his treatment. The trial court explained: "There's significant other evidence in the

record regarding Mr. Boyles['s] failure to comply with treatment recommendation which is the subject matter addressed by those records." Indeed, Dr. Peach's testimony provided evidence of repeated substance abuse treatment attempts, subsequent relapses, and non-compliance with treatment recommendations. Moreover, Fleegel did not avail herself of the opportunity to call Dr. Peach as a live witness to discuss the desired records or to call the doctors and other medical personnel who prepared the disputed records as witnesses. Therefore, this ruling does not warrant reversal.[34]

5. *The trial court's evidentiary decisions do not constitute cumulative error requiring reversal.*

Fleegel has presented on appeal challenges to several evidentiary decisions of the trial court. She urges this court to apply the doctrine of "cumulative error" to find that even if each individual error was harmless, the impact of the errors have deprived her of a fair trial. In this case, the record included evidence from which Fleegel could make all of the arguments consonant with her theory of the case. Therefore, the trial court's rulings did not violate Fleegel's right to a fair trial, and reversal is not warranted.

B. *The Trial Court Did Not Err by Awarding Attorney's Fees to a Criminal Victim Who Was Not the "Prevailing Party" Under Civil Rules 68 and 82.*

Although Boyles was the prevailing party under Rule 68 and thus entitled to an award for attorney's fees under Rule 82,[35] the trial

---

34. We recently noted in *Dobos v. Ingersoll*, 9 P.3d 1020, 1027 (Alaska 2000), that "medical records, including doctors' chart notes, opinions, and diagnoses, fall squarely within the business records exception to the hearsay rule." But because any error in excluding the medical records was harmless, we need not reach the question of whether the records were sufficiently authenticated to be admitted under the business records exception.

35. Civil Rule 68 states, in part: "If an offeror receives costs and reasonable actual attorney's fees under [the offer-of-judgment rule], that offeror shall be considered the *prevailing party* for

purposes of an award of attorney fees under Civil Rule 82." (Emphasis added.)

Civil Rule 82 provides, in part:
(a) *Allowance to Prevailing Party.* Except as otherwise agreed to by the parties, the prevailing party in a civil case shall be awarded attorney's fees calculated under this rule.
(b) Amount of Award.
. . . .
(2) In cases in which the prevailing party recovers no money judgment, the court shall award the prevailing party in a case which goes to trial 30 percent of the prevailing party's reasonable actual attorney's fees which were necessarily incurred.

court concluded that it was proper to offset that fee award against a separate award to Fleegel as the victim of a serious crime.

Alaska Statute 09.60.070(a) provides that a person who has been injured may recover from the tortfeasor full reasonable attorney's fees in a civil action if the injury resulted from an attempt on the part of the offender to commit a serious criminal offense.[36] A "serious criminal offense" includes driving while intoxicated.[37] We have never before addressed the interaction of this statute with other statutes and rules regarding attorney's fees.

1. *A crime victim need not be the "prevailing party" as defined by Rule 68 to be awarded attorney's fees under AS 09.60.070.*

Boyles argues that Fleegel should not have received an award of attorney's fees because Boyles was the prevailing party for purposes of attorney's fees. Boyles contends that he is the prevailing party based on his Rule 68 offer that exceeded the jury award of damages against him. He argues that as the prevailing party, his right to attorney's fees under Alaska Civil Rule 82 preempts Fleegel's right to receive attorney's fees under the crime victims' statute, AS 09.60.070.

The superior court attempted to reconcile the provisions that separately provide attorney's fees for victims of serious crimes and for parties who make a pretrial settlement offer more generous than the jury award. It determined that "[b]ecause each statute can be applied here without doing harm to the purposes behind the other ... each party is entitled to an award of fees."

Boyles argues that the crime victims' statute, AS 09.60.070, "incorporates the prevailing party restriction of Rule 82," the rule providing attorney's fees to the prevailing party in a civil case.[38] However, AS 09.60.070 contains no prevailing party requirement and appears to have been intended to apply independently of Civil Rule 82.

Cases prior to the 1997 amendment of AS 09.30.065 (the offer-of-judgment statute) and Rule 68 (the offer-of-judgment rule) defined "prevailing party" as the party "successful with regard to the main issues in the action."[39] When in 1991 the legislature adopted AS 09.60.070,[40] the crime victims' statute, Rule 82 provided for attorney's fees for the "prevailing party" in a civil case without defining that term. The act enacting the crime victims' statute amended Rule 82 "by requiring an award of full reasonable attorney's fees to prevailing victims of certain crimes."[41] This amendment therefore directed that the provision allowing full attorney's fees for crime victims replace the partial attorney's fees award that the crime victim could otherwise recover under Rule 82 had she prevailed in the civil action. This is consistent with the legislative intent, as expressed by then-Representative Dave Donley, a sponsor of the victims' rights bill, to "readjust[ ] the balance between victims and the perpetrators in the system by making the experience of being involved in a crime a little less burdensome" and "allowing victims of violent crimes to recover ... full attorneys fees in civil cases brought against the person who committed th[e] crime."[42]

---

36. AS 09.60.070 provides:

 (a) A person who has been injured or damaged, or the estate of a person who has died, may recover from the offender full reasonable attorney fees in a civil action or a wrongful death action if the injury, damage, or death resulted from

 ....

 (2) the commission or attempt on the part of the offender to commit a serious criminal offense.

 ....

 (c) In this section, "serious criminal offense" means the following offenses:

 ....

 (14) driving while intoxicated or another crime resulting from the operation of a motor vehicle, boat, or airplane when the offender is intoxicated.

37. *See* AS 09.60.070(c)(14).

38. *See* Civil Rule 82(a) *supra* note 35.

39. *Cooper v. Carlson*, 511 P.2d 1305, 1308 (Alaska 1973).

40. AS 09.60.070 was initially enacted as AS 09.55.601, and renumbered in 1994.

41. Ch. 57, § 25, SLA 1991.

42. *Hearing on H.B. 100, Victims' Rights, Before the House Comm. on Health, Educ. & Social*

It was not until 1997, six years after the crime victims' statute was enacted, that the legislature established that the offeror of a settlement that met certain standards "shall be considered the prevailing party for the purposes of an award of attorney's fees under the Alaska Rules of Civil Procedure."[43] Therefore, at the time it enacted the provision awarding attorney's fees to crime victims, the legislature could not have contemplated that the 1997 offer-of-judgment definition of prevailing party would apply. And when the legislature enacted amendments to the offer-of-judgment rule in 1997, it did not specifically address the crime victims' statute.

We have determined that the "prevailing party" requirement of Rule 82 does not limit the ability to award attorney's fees under other statutory provisions that use standards separate from Rule 82. For example, a spouse may seek attorney's fees during a divorce or annulment proceeding under AS 25.24.140.[44] Considerations other than "prevailing party" dictate whether such fees are awarded: "Cost and fee awards in a divorce

are not to be based on the prevailing party concept, but primarily on the relative economic situations and earning powers of the parties."[45]

Moreover, the interpretation of federal fee-shifting statutes by federal courts indicates that an offer-of-judgment rule and statutory fee-shifting coexist. Federal Rule of Civil Procedure 68 differs from Alaska Civil Rule 68 in that the federal rule allows the recovery of "costs" and does not specify whether "costs" includes attorney's fees.[46] Where attorney's fees are statutorily awarded, in cases under the Clean Air Act and Fair Labor Standards Act, for example, rejection of a Federal Rule 68 offer does not preclude an award for post-offer fees.[47] Professors Wright, Miller, and Marcus also indicate that an offset of attorney's fees could be appropriate, in warning that "courts must be careful to avoid the sort of automatic prohibition on post-offer fees imposed by Rule 68."[48]

We therefore affirm the trial court's award of fees on the basis that a crime victim need not be a "prevailing party" to be awarded

*Servs.*, 17th Legis. (Alaska, March 25, 1991) (summary of statement by Rep. Dave Donley, prime sponsor of H.B. 100).

**43.** AS 09.30.065(b); *see also* Alaska Civil Rule 68(b) and (c) (providing that "[i]f the judgment finally rendered by the court is at least 5 percent less favorable to the offeree than the offer .... that offeror shall be considered the prevailing party for purposes of an award of attorney fees under Civil Rule 82"). The trial court concluded: "[Boyles] qualifies for attorney fees because his pretrial settlement offer, rejected by [Fleegel], was substantially more generous than the jury award." Although the trial court concluded that Boyles was the prevailing party under AS 09.30.065(b), the same conclusion may be reached under Rule 68. In Supreme Court Order 1281 (effective August 7, 1997), this court accelerated the effective date of the amendment to Civil Rule 68, providing that "the amendments to Civil Rule 68 adopted by paragraph 5 of this order are applicable to all cases filed on or after August 7, 1997." Thus, Civil Rule 68, as amended in 1997, applies in this case because this case was filed on August 20, 1997.

**44.** AS 25.24.140(a)(1).

**45.** *Cooke v. Cooke*, 625 P.2d 291, 293 (Alaska 1981) (citing *Burrell v. Burrell*, 537 P.2d 1, 7 (Alaska 1975)); *see also Houger v. Houger*, 449 P.2d 766, 772 (Alaska 1969) (considering former AS 25.24.140, and noting that there was "legisla-

tive intent that attorney's fees be allowable ... in a divorce action regardless of who is the prevailing party"); *Johnson v. Johnson*, 564 P.2d 71, 76 (Alaska 1977) ("[T]he 'prevailing party' rule, used for determination of awards of attorney's fees under Rule 82, Alaska Rules of Civil Procedure, is not applicable to awards of fees in divorce actions.").

**46.** Federal Rule of Civil Procedure 68 states, in part:

At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued.... If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.

**47.** *See United States v. Trident Seafoods*, 92 F.3d 855, 860 (9th Cir.1996) ("[B]ecause attorneys' fees are not properly awardable as 'costs' under the [Clean Air Act], they are not within the scope of Rule 68."); *Haworth v. Nevada*, 56 F.3d 1048, 1051 (9th Cir.1995) (Fair Labor Standards Act).

**48.** 12 Charles Alan Wright, Arthur R. Miller and Richard L. Marcus, *Federal Practice and Procedure: Civil 2d* § 3006.2 (2d ed.1997).

attorney's fees under AS 09.60.070, the crime victims' statute. Apart from questioning the hypothetical propriety of requesting full fees in the context of a contingent fee arrangement, Boyles does not challenge the propriety of hybrid fees or the specific calculation method used by the trial court. Because these issues were not briefed, we decline to reach them.

### 2. *Timing of motion for attorney's fees*

 Boyles also argues that the trial court should not have awarded Fleegel attorney's fees under AS 09.60.070, the crime victims' statute, because a motion for these fees was not filed within ten days after the date of judgment. Civil Rule 82(c) establishes the time period in which attorney's fees must be requested: "Failure to move for attorney's fees within 10 days, or such additional time as the court may allow, shall be construed as a waiver of the party's right to recover attorney's fees."

The initial judgment order was distributed on January 29, 1999. On May 14, 1999, Fleegel filed a motion requesting that the superior court vacate the initial judgment and enter a new judgment that conformed with AS 09.60.070, the crime victims' statute. Fleegel sought relief under Alaska Civil Rule 60(b), which permits the court to relieve a party from a judgment for reasons of mistake, inadvertence, or excusable neglect where a motion seeking such relief is filed "within a reasonable time." [49] The superior court granted the motion for relief from judgment on June 14, 1999, finding that such relief served "the interests of justice." [50] Because Fleegel sought relief from judgment

under Civil Rule 60(b), rather than attorney's fees under Civil Rule 82(c), the limitations period for Civil Rule 82(c) does not apply.

The trial court did not abuse its discretion in determining that Fleegel did not waive her request for attorney's fees. [51] We therefore affirm the attorney's fee award on its merits.

### V. CONCLUSION

We AFFIRM the evidentiary rulings made by the trial court. We also AFFIRM the attorney's fee awards.

BRYNER, Justice, with whom CARPENETI, Justice, joins, dissenting.

BRYNER, Justice, with whom CARPENETI, Justice, joins, dissenting.

I disagree with the opinion's conclusions concerning the admissibility of evidence of Boyles's insurance coverage and the propriety of denying Fleegel's alternative motion to exclude for cause all prospective jurors who were State Farm policyholders. I would reverse on those points.

### EVIDENCE OF BOYLES'S INSURANCE COVERAGE

The opinion concludes that the superior court correctly denied Fleegel's motion to exclude evidence of Boyles's insurance coverage, reasoning that Alaska Evidence Rule 411 did not preclude this evidence because evidence of a defendant's wealth has relevance independent of fault in a punitive damages case: "The trial court focused on the relevance of insurance to Boyles's financial condition, a purpose not excluded under Rule

---

**49.** Civil Rule 60, which provides relief from a judgment or order, states, in part:

(b) *Mistakes—Inadvertence—Excusable Neglect—Newly Discovered Evidence—Fraud—Etc.* On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise or excusable neglect;

. . . .

(6) any other reason justifying relief from the operation of the judgment.

The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the date of notice of the

judgment or orders as defined in Civil Rule 58.1(c).

**50.** The order found: "Because plaintiff's counsel's affidavit shows that he and other experienced counsel were unaware of the attorney fee statute, the failure to assert an attorney fee claim under AS 09.60.070 is excusable neglect. The attorney fee statute reflects important public policy. Granting the motion, and awarding fees required by the statute, will not cause unfair prejudice to the defendant."

**51.** *See Hatten v. Hatten,* 917 P.2d 667, 670 n. 3 (Alaska 1996) (applying abuse of discretion standard to review of relief from judgment).

411. Therefore, the trial court did not err in failing to exclude evidence of insurance coverage." [1] But the opinion's analysis overlooks persuasive authority to the contrary and skips two important questions in the chain of admissibility: whether insurance coverage actually is relevant evidence of wealth and, if it is, whether its prejudicial effect outweighs its probative value.

While the opinion correctly observes that evidence of the defendant's wealth is normally relevant in a punitive damages case,[2] it neglects to ask if evidence of insurance coverage for punitive damages is relevant evidence of wealth under the specific facts of this case. Here, assuming that Boyles had shown that he was covered for punitive damages,[3] evidence of his coverage would have been irrelevant to prove his wealth. For as the New Mexico Supreme Court recognized, "[P]unitive damages liability coverage is not an asset which can be used to measure true punishment and ... therefore, it should not be considered by the jury in assessing a defendant's financial standing." [4] Wisconsin has recently ruled the same way: "Although we note that when assessing punitive damages a jury is permitted to know evidence of the wrongdoer's wealth, insurance coverage is not evidence of wealth." [5]

And even if evidence of coverage were deemed relevant to the issue of wealth in a punitive damages case, Evidence Rule 403 would preclude its admission if the trial court found that the probative force of that evidence was outweighed by "the danger of unfair prejudice, confusion of the issues, or misleading the jury." [6] Here, the trial court never undertook the balancing process prescribed by Rule 403. But it seems to me that the potential prejudicial effect of the disputed evidence far outweighed whatever limited probative value it might have had. As evidenced by a juror's all-too-predictable request to know whether "punitive damages [are] direct[ed] to Mr. Boyles or to the insurance company," as well as by the jury's anomalous punitive damages verdict (which found Boyles deserving of punishment but imposed no punitive damages), the trial court's unfortunate decision to allow the jury to learn of Boyles's insurance coverage opened the door to precisely the kind of danger that Rule 403 was designed to prevent: causing confusion and misleading the jury.

New Mexico and Wisconsin have both suggested that evidence of coverage would have to be excluded as more prejudicial than probative, even if it were relevant.[7] Texas agrees.[8] And most recently, Idaho has reached the same conclusion.[9] Indeed—barring a narrow exception carved out for a situation not presented here—it appears that no other court addressing this issue has

1. Op. at 1272.

2. *See id.* at 1271.

3. Preliminarily, it is worth noting that evidence of coverage would be categorically irrelevant to the issue of a defendant's ability to pay punitive damages absent a specific showing that the defendant was actually covered for *punitive* damages. *Cf. Owens–Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 40–41 (Tex.1998) (distinguishing between evidence of actual and potential wealth in punitive damages case). Here, Boyles's counsel equivocated on this issue when asked whether Boyles was covered for punitive damages. Although hired by State Farm to defend the case, counsel insisted that he could not speak for the company and said only "[m]y position is that there is [coverage]."

4. *Baker v. Armstrong,* 106 N.M. 395, 744 P.2d 170, 173 (1987).

5. *City of West Allis v. Wis. Elec. Power Co.,* 248 Wis.2d 10, 635 N.W.2d 873, 889 (2001) (citations omitted), *review denied,* 643 N.W.2d 93 (Wis. 2002).

6. Alaska R. Evid. 403.

7. *See Baker,* 744 P.2d at 173; *City of West Allis,* 635 N.W.2d at 888–89.

8. *See Owens–Corning Fiberglas Corp.,* 972 S.W.2d at 41.

9. *Schaefer v. Ready,* 134 Idaho 378, 3 P.3d 56, 59 (Idaho App.2000):

 [T]he [trial] court ruled that evidence of the Readys' insurance coverage for punitive damages awards was not admissible because "the probative value was substantially outweighed by its potential prejudicial impact." Specifically, the court felt that the "mention of insurance invites higher awards than are justified by the facts." This ruling is in accord with [Idaho Rule of Evidence] 411[.]

found such evidence admissible.[10] The narrow exception is a curative one: it allows plaintiffs to admit evidence of coverage to rebut a defense that a defendant is impoverished and therefore unable to pay punitive damages.[11]

*Shane v. Rhines*, which today's opinion holds out as its guiding authority,[12] is just such a case: it considered whether evidence of coverage was admissible to rebut the defendant's affirmative claim of poverty.[13] Neither *Shane's* per curiam plurality nor either of its separate opinions purports to hold that evidence of coverage should be admitted except as actually needed to cure a misleading impression left by affirmative evidence of poverty. And notably, in *Schaefer v. Ready*, a more recent punitive damages case in which admission of evidence proving a defendant's coverage was sought to cure affirmative evidence of poverty, the Idaho Supreme Court held that the better approach would be to exclude with one stroke both the affirmative defense and the consequent need for rebuttal.[14]

*Shane* and *Schaefer*, then, both serve to illustrate that necessity plays an indispensable role in Evidence Rule 403's balancing process. Evidence that is arguably relevant but has an obvious potential to cause prejudice should be admitted under the rule only when a realistic, case-by-case assessment reveals an apparent need for its admission that predominates over its potential to confuse, mislead, or unfairly prejudice the jury.

In the present case, there was no conceivably legitimate need for evidence of Boyles's insurance coverage. For Boyles's counsel himself injected the fact of coverage; and he did so not to *refute* evidence that Boyles was unable to afford punitive damages. To the contrary, defense counsel relied on this information to forward a novel theory: that because Boyles—the only truly guilty party—could not pay punitive damages, his innocent insurer should not be targeted for punishment in his place.

Yet this theory of relevance—the only theory that the disputed evidence of coverage realistically tended to support—is disingenuous and fundamentally subversive to the public interest. Insurance is a regulated industry in Alaska, as it is almost everywhere else in the nation, because the state recognizes a strong public interest in fostering trust in insurers and in protecting consumers who choose to buy coverage.[15] Once insurers contract to pay claims for punitive damages, then, the state has a strong public interest in ensuring that coverage is fairly provided and claims fairly paid. It would be inimical to this public interest if insurers could avoid legal responsibility for contractual obligation by the simple expedient of insisting that they are innocent parties and that their insured drivers should be punished only to the extent of their personal ability to pay.

Correspondingly, there is simply no factual basis for arguing that the insurer's liability to pay punitive damages amounts to punish-

---

10. The court's opinion tries to stand the point on its head by observing that "no court has held that introduction of insurance evidence is reversible error because it is prejudicial to a plaintiff[.]" Op. at 1272. Yet the absence of authority simply reflects the reality that few trial courts have ever thought to admit evidence of coverage for purposes comparable to those at issue here: to prove that a defendant deserving of punishment should not be punished because the defendant's innocent insurer should not have to pay-even though the insurer presumably has contracted and been paid to do just that. The salient point, then, is that case law uniformly rejects the admission of such evidence; no authority supports its admission on the theory that prejudicing a plaintiff's case is somehow more acceptable than prejudicing a defendant's case.

11. *See, e.g., Wheeler v. Murphy,* 192 W.Va. 325, 452 S.E.2d 416, 424 (1994).

12. *See* Op. at 1271–1272.

13. 672 P.2d 895, 899 (Alaska 1983).

14. *See* 3 P.3d at 59. Cases in jurisdictions cited by *Schaefer* as applying the same rule indicate that those jurisdictions routinely exclude evidence of coverage in punitive damages cases. *See id.*

15. *See, e.g.,* AS 21.03.010 (requiring "[a]ll persons transacting a business of insurance in this state" to comply with the Alaska Insurance Code); AS 21.06.010 (authorizing appointment of statewide director of insurance); AS 21.06.020 (establishing division of insurance); and AS 21.06.080 (empowering director of insurance to enforce Alaska Insurance Code).

ment for the insurer: to an insurer that accepts premiums to cover punitive damages, the obligation to pay an insured driver's punishment is simply a business debt that the company has contracted to pay. In my view, then, there was no legally permissible reason to allow Boyles's counsel to inform the jury that Boyles was insured.

Nor can the record sustain a finding of harmless error. Appellate courts have long recognized that evidence of insurance coverage can easily inflame juries; courts have likewise recognized that the risk of prejudice inherent in such evidence poses especially grave dangers in punitive damages cases,[16] where the prejudice can cut either way, acting as "a two-edged sword depending on the wealth or poverty of the defendant."[17] And courts have further recognized that this sword of unfair prejudice is no less dangerous when wielded by an insured defendant than when in the hands of an injured plaintiff.[18]

Here, Boyles's attorney artfully wielded the sword against Fleegel. After convincing the trial court at the outset of the proceedings to deny Fleegel's motion to exclude evidence of coverage, Boyles's counsel immediately told the jury during voir dire that he had been hired by Boyles's insurer. Fleegel did everything she could to contain the inevitable damage flowing from this revelation: she downplayed the issue, allowed Boyles's attorney no obvious opening to dwell on Boyles's coverage during the trial, and stipulated to an instruction at the end of trial that mirrored the court's pretrial ruling and told the jury no more than defense counsel took pains to tell it at the outset-that Boyles was insured and was represented by a lawyer hired by his insurer.

Despite Fleegel's best efforts, defense counsel used Boyles's coverage as the foundation for a successful empty-chair defense: a tactic that emphasized Boyles's absence and poverty and that invited the jury to conclude that his insurer had been unjustly left holding the bag-abandoned by the only truly guilty party. Defense counsel's first words in closing argument reminded the jury that Boyles's insurer was the real party in interest: "It's pretty silly to argue that an insurance company likes a hit-and-run driver or a drunk driver." Defense counsel proceeded to emphasize that Boyles would not be deterred by an award of punitive damages, since "[h]e doesn't have any assets." And the point was cemented in defense counsel's final words to the jury: "[I]t's quite clear that they're not really trying to get money back from Mr. Boyles. He doesn't have any capacity to pay.... [H]e's not the target here."

Yet in the eyes of the law Boyles *was* Fleegel's only target—whether Boyles had insurance or not. Evidence of his coverage—or possible coverage—was both immaterial as a matter of law and irrelevant as a matter of fact. But as illustrated by the jury's question concerning punitive damages and its ensuing verdict, Boyles's strategy nonetheless had its intended effect.

Today's opinion nonetheless declines to find error, professing an inability to locate any cases holding that "introduction of insurance evidence is reversible error because it is prejudicial to a plaintiff."[19] Yet this absence of precedent is beside the point.[20] A novel tactic whose sole purpose is to prejudice an opponent is hardly proper merely because it has never before been condemned; and the

16. *See, e.g., City of West Allis v. Wis. Elec. Power Co.*, 248 Wis.2d 10, 635 N.W.2d 873, 889 (2001).

17. *S. Life & Health Ins. Co. v. Whitman*, 358 So.2d 1025, 1027 (Ala.1978) (Jones, J., concurring).

18. *See Schaefer*, 3 P.3d at 59 (quoting *Kemezy v. Peters*, 79 F.3d 33, 37 (7th Cir.1996)):

[I]t is bad enough that insurance or indemnification reduces the financial incentive to avoid wrongdoing.... It would be worse if the cost of insurance fell, reducing the financial disin-

centive to engage in wrongful behavior, because the insurance company knew that its insured could plead poverty to the jury. (Quotation marks omitted.)

19. Op. at 1272.

20. The observation is also incomplete in that it simply ignores the Idaho Supreme Court's carefully reasoned opinion in *Schaefer v. Ready*, which would categorically exclude evidence of insurance coverage even if offered to refute a claim of inability to pay. *See* 3 P.3d at 59.

fact that the tactic prejudices a plaintiff rather than a defendant is wholly irrelevant.

More to the point is the opinion's refusal to follow well-settled law that allows evidence of coverage to be admitted only when offered by a party seeking to refute an opponent's affirmative claim of inability to pay punitive damages. And more telling still is the opinion's failure to identify any legitimate purpose that evidence of coverage could conceivably serve when offered *on behalf* of a party like Boyles, who actively asserted that he was too poor to pay punitive damages.

On this record, then, it is simply unrealistic to find either an absence of error or harmless error.

## DISQUALIFICATION OF STATE FARM POLICYHOLDERS

I also disagree with the opinion's decision to affirm the trial court's denial of Fleegel's alternative motion to excuse State Farm policyholders from serving on her jury.

As a contingent remedy to be used in the event that the court denied her motion to preclude evidence of Boyles's insurance coverage, Fleegel asked the superior court for voir dire examination to identify and excuse for cause all members of the jury panel who were insured by State Farm. The court denied the motion, instead precluding any mention of State Farm by name and barring any inquiry as to the identity of prospective jurors' insurers. In upholding this ruling, today's opinion posits that "[w]hether a juror is dismissed for cause is within the discretion of the trial court." [21] The opinion then concludes that the superior court did not abuse its discretion. [22]

But the opinion is mistaken in assuming that Fleegel's challenge for cause raised a discretionary issue. Alaska Civil Rule 47(c)(10) and (12) categorically require a challenge for cause to be granted as to any prospective juror who is a client of a party or who has a financial interest in the outcome of the case. [23] Our decisions applying these provisions explicitly recognize that they prohibit "certain relationships between jurors and parties" and that "[a] trial judge does not have discretion to deny a challenge for cause once that relationship has been established." [24]

In my view, when a court presiding over a punitive damages claim allows an insured defendant to tell the jury that the defendant's insurance company is the real party in interest—the plaintiff's real "target"—this information inevitably creates a genuine risk that jurors who are policyholders of the same insurer, or who think that they might be, will perceive a financial interest in the outcome. The financial interest here is certainly no more attenuated than the one at issue in *Reich v. Cominco Alaska, Inc.,* where we held that Rule 47(c)(12) required automatic disqualification of all prospective jurors who were shareholders in an Alaska Native corporation that was not a party to the litigation but had financial ties to the named defendant and stood to benefit indirectly from the outcome of the case. [25] And this interest is at least as substantial as the one in *Malvo v. J.C. Penney Co.,* where we held that Rule 47(c)(10) categorically required exclusion of all prospective jurors who had accounts with J.C. Penney and therefore technically qualified as the company's "debtors." [26]

---

**21.** Op. at 1272.

**22.** *See id.* at 1272–1273.

**23.** Alaska Civil Rule 47(c) states:
 *Challenges for Cause.* After the examination of prospective jurors is completed and before any juror is sworn, the parties may challenge any juror for cause. A juror challenged for cause may be directed to answer every question pertinent to the inquiry. Every challenge for cause shall be determined by the court. The following are grounds for challenge for cause:
 . . . .
 (10) That the person is the guardian, ward, landlord, tenant, employer, employee, partner,

client, principal, agent, debtor, creditor, or member of the family of a party or attorney. . . .
 . . . .
 (12) That the person has a financial interest, other than that of a taxpayer or a permanent fund dividend recipient in the outcome of the case.

**24.** *Reich v. Cominco Alaska, Inc.,* 56 P.3d 18, at 22 (Alaska 2002); *see also Malvo v. J.C. Penney Co.,* 512 P.2d 575, 579 (Alaska 1973).

**25.** 56 P.3d at 18–20, 27.

**26.** 512 P.2d at 579.

In reaching the opposite conclusion here, today's opinion posits that "[t]he financial interest that State Farm insured jurors have in this case is speculative at best."[27] But the opinion's analysis of the closeness of the relationship between policyholders and their insurers is misdirected, for Rule 47(c)(10) expressly preempts the issue. As already mentioned, Rule 47(c)(10) categorically excuses all prospective jurors who are "clients" of a party or an attorney.[28] Since policyholders are undeniably clients of their insurers, Rule 47(c) unequivocally deems the financial relationship between insurance companies and their policyholders sufficiently close to require automatic disqualification in any action where a policyholder's insurer is a party or an attorney.

Suppose for example that State Farm was actually named as a defendant in a lawsuit: there would be no doubt that its policyholders would have a sufficiently close financial interest to require their automatic disqualification as "clients" under Rule 47(c)(10). Because the financial relationship between State Farm and its policyholders is no different here than it would be if State Farm were a named party, it follows that the policyholder/insurer relationship itself is sufficiently close to warrant disqualification, provided that the other requirements of Rule 47 are met. The critical question, then, is whether the role State Farm played in this case justifies treating it as a party.

In the run-of-the-mill personal injury case against an insured party, of course, an insurer's role might be insufficient to warrant treating it as a party under Rule 47. But when a policyholder acting through counsel retained by an insurer expressly reveals the existence of coverage and portrays the insurer as the plaintiff's true "target," it seems to me that, in terms of triggering concerns for potential jury bias, the insurer's role becomes virtually indistinguishable from the role it would play as an actual party. Hence, in this situation I would conclude that the insurer must be treated as a party under

Rule 47(c)(10)'s provisions governing automatic disqualification of clients.

In the proceedings below, the superior court's order restricting jury voir dire precluded Fleegel from establishing the very relationship that would have triggered Rule 47(c)'s mandatory right to a challenge for cause. True, the order also prevented the jury panel from learning the name of Boyles's insurer. But this precaution hardly cured the potential for prejudice: by allowing Boyles to tell the jury that he was insured by an unnamed insurer, the trial court effectively left *all* insured jurors—not just those insured by State Farm—to speculate about what impact a punitive damages verdict might have on their own insurance premiums.

Thus, in my view, concealing State Farm's identity was no more acceptable here than shielding J.C. Penney's identity would have been in *Malvo v. J.C. Penney Co.* or shielding the Native corporation's identity would have been in *Reich v. Cominco Alaska, Inc.* As shown by the jury's question and its ensuing verdict, the superior court's approach simply spread the danger of prejudice; it failed to protect Fleegel from potential jury bias as required under Rule 47(c).

Accordingly, given the superior court's decision allowing defense counsel to tell the jury of Boyles's insurance coverage, I would hold that Rule 47(c)(10) required the court to grant challenges for cause as to all prospective jurors who were State Farm policyholders.

*CONCLUSION*

I therefore dissent.

---

27. Op. at 1273–1274.

28. *See supra* note 23 and accompanying text.