601 A.2d 837

**Margaret HARMOTTA and Nick Harmotta, Husband and Wife, Appellants,**

v.

**Father Phillip BENDER, Pastor of Immaculate Conception Church of Vintondale, Immaculate Conception Church of Vintondale, Rev. James Hogan, Former Bishop of the Altoona–Johnstown Diocese, Rev. Joseph Adamec, Bishop of the Altoona–Johnstown Diocese, and Altoona–Johnstown Diocese, Appellees.**

Superior Court of Pennsylvania.

Argued Oct. 2, 1991.

Filed Jan. 10, 1992.

Petition for Allowance of Appeal
Denied May 26, 1992.

Robert A. Cohen, Pittsburgh, for appellants.

Stephen L. Dugas, Hollidaysburg, for appellees.

Before TAMILIA, KELLY and MONTGOMERY, JJ.

KELLY, Judge:

In this opinion we are called upon to determine whether the trial court properly refused to exclude for cause Roman Catholic jurors who were members of a diocese, a named party defendant with a remote financial interest in the outcome of the lawsuit, but were not members of a specific parish, also a named party defendant with a direct financial interest in the outcome of the lawsuit; and whether the trial court properly instructed the jury that the doctrine of hills and ridges dictated the appellants' burden of proof. We find, first, that the trial court properly refused to exclude for cause members of the diocese given their remote financial interest in the litigation and their avowed commitment to decide the case fairly and impartially. Second, we find that the doctrine of hills and ridges governs whether a plaintiff may recover for a fall on an ice- or snow-covered sidewalk or parking lot which occurred at a time when generally slippery conditions prevailed in the community. Therefore, we affirm.

The relevant facts and procedural history are as follows. In January, 1986, the appellant-wife was injured when she fell and was injured while traversing a snow-covered parking lot at the Immaculate Conception Church of Vintondale

in order to attend a bingo game held there. The appellants filed this action against Father Phillip Bender, Pastor of the Immaculate Conception Church of Vintondale, and the Bishop of the Altoona–Johnstown Diocese to recover damages resulting from the appellant-wife's injuries.

During jury selection, the appellants sought to challenge for cause any venireperson who was a member of the Altoona–Johnstown Diocese. The trial court denied the appellants' challenge, questioned every panel member who admitted membership in the diocese, and allowed to remain those venirepersons who indicated that they would decide the case in a fair and impartial manner. Of the thirteen jurors selected (twelve jurors and one alternate), three indicated membership in the Altoona–Johnstown Diocese. (N.T. 11/28/90 at 11, 18, 19). None were members of the Immaculate Conception Church of Vintondale. Each of these jurors indicated that they could decide this case in an impartial manner.

At trial, the appellant-wife testified regarding the condition of the parking lot on the day of her injury. She testified that the surface of the parking lot was "smooth, white covered." (N.T. 12/4/90 at 9). She also stated that fresh snow, three to five inches deep, covered the parking lot (*Id.* at 13), and that there was no indication to her that there was ice underneath the snow. (*Id.* at 12). The appellant-wife continued, stating that after she had exited her daughter's automobile and walked six to eight feet, she could feel something "like a ridge" under her foot. The appellant-wife testified that she was watching where she was walking when her foot hit something, she tripped, and she fell down on her left side. (N.T. 12/4/90 at 10).

Both parties offered expert testimony regarding the weather conditions in the Vintondale area at the time of the accident and the resulting accumulation of ice and snow on the parking lot. The appellants' expert testified that there would be "anywhere from a trace to an inch-and-a-half" of snow and packed ice on the parking lot and "approximately . . . two inches" of fresh snow on top of that. (N.T. 12/5/90

at 75, 98). An expert testifying on behalf of the appellees stated that there would have been one inch of compacted icy snow under a "dusting to a quarter of an inch" of fresh snow covering the parking lot. (N.T. 12/6/90 at 20, 32).

The trial court instructed the jury that, in order to recover for a fall on an ice or snow-covered parking lot, the appellants needed to prove

> that the snow and ice had accumulated on the lot in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians traveling thereon; and that the [appellees] had notice [,] either actual or constructive, of the existence of such condition ... and ... that it was this dangerous accumulation of snow or ice into the ridges or elevations which actually caused the [appellant-wife] to fall.

(N.T. 12/7/90 at 37). In so charging the jury, the trial court rejected the appellants' points for charge 4, 5, and 6, which placed a duty on the appellees to implement some remedial measure (placing salt or ashes, warning visitors of the presence of ice, or barricading the icy area) if they knew or should have known of the icy patches, and which also eliminated the appellants' burden of showing that ice and snow had accumulated in hills and ridges thereby unreasonably obstructing the appellant-wife's travel.

The jury returned a verdict in favor of the appellees. The appellants filed a motion for post-trial relief. The trial court denied the appellants' request for a new trial, finding that the appellants' challenge for cause based on membership in the Altoona–Johnstown diocese was properly refused, and that the doctrine of "hills and ridges" with which it charged the jury has not been abandoned in this Commonwealth. (Tr.Ct.Op. of 2/22/91 at 2–3). This timely appeal followed.

On appeal, the appellants raise the following issues for our review:

I. WAS THE REFUSAL OF THE LEARNED TRIAL JUDGE TO EXCLUDE MEMBERS OF THE ALTOO-

NA JOHNSTOWN DIOCESE, ONE OF THE APPEL-
LEES HEREIN, FROM THE JURY PANEL, AN
ABUSE OF DISCRETION?

II.  DID THE LEARNED TRIAL JUDGE COMMIT AN
ERROR OF LAW IN REFUSING TO CHARGE THE
JURY IN ACCORDANCE WITH THE LEGAL STAN-
DARD APPLICABLE TO ICE AND SNOW CASES
PROPOUNDED BY THE PENNSYLVANIA SU-
PREME COURT IN *FERENCZ V. MILIE*, 517 Pa. 175
[141], 535 A.2d 59 (1987)?

(Appellant's Brief at 3).

██  The appellants first contend that the trial judge's
refusal to exclude for cause members of the Altoona–
Johnstown Diocese constituted an abuse of discretion.  The
appellants argue that membership in the appellee-diocese
would render the venirepersons incompetent to sit as jurors
due to the bias, prejudice, and unfairness that would result
because the members of the diocese had an economic inter-
est in the outcome of the case and because "[d]iocesan
members may have been subject to moral intimidation at
the trial that would nullify their oaths as jurors." (Appel-
lants' Brief at 7).  The appellants claim that our Supreme
Court's holding in *Rissmiller v. Evangelical Lutheran
Congregation*, 268 Pa. 41, 110 A. 740 (1920), supports their
argument that Catholics who are members of the Altoona–
Johnstown Diocese should be disqualified from the jury
venire.

Where a party argues that the trial judge erred in re-
fusing to sustain certain challenges for cause, the scope of
our review is limited.  This Court has long recognized that

wide latitude is given to the discretion of the trial judge
and, absent any showing that the trial judge abused his
discretion in this respect, his action must be sustained.

*Linsenmeyer v. Straits*, 402 Pa. 7, 166 A.2d 18, 22–23
(1960), *citing Commonwealth v. Pasco*, 332 Pa. 439, 445, 2
A.2d 736 (1938).

The systematic and intentional exclusion of jurors based on their membership in a particular race, religion, or social class is antagonistic to the American tradition of trial by jury, whether a criminal or civil proceeding is involved. *Thiel v. Southern Pacific Co.*, 328 U.S. 217, 220, 66 S.Ct. 984, 985, 90 L.Ed. 1181, 1184 (1946). When determining juror competence, a trial judge need assess individual qualifications and a particular juror's ability to consider, in an unbiased manner, the evidence presented at trial. *Batson v. Kentucky*, 476 U.S. 79, 87, 106 S.Ct. 1712, 1718, 90 L.Ed.2d 69, 81 (1986), *citing Thiel, supra* 328 U.S. at 223–24, 66 S.Ct. at 987. Courts in this Commonwealth have long held that "a juror is not incompetent merely because he and one of the parties are members of the same religious denomination." *Sebring v. Weaver*, 42 Pa.Super. 588, 589–90 (1910); *see also Commonwealth v. Figari*, 166 Pa.Super. 169, 170, 70 A.2d 666, 667 (1950).

The appellants contend that all members of the Altoona–Johnstown Diocese have a direct financial contact to the appellee-Diocese, and therefore, a challenge for cause should have been granted. We cannot agree.

This Court has held that challenges for cause should be granted in two instances:

(1) when a venireman has such a close relationship be it familial, financial, or situational, with any of the parties, counsel, victims, or witnesses that a likelihood of prejudice should be presumed, and (2) when a venireman's answers and conduct demonstrate likelihood of prejudice.

*Commonwealth v. Jackson*, 386 Pa.Super. 29, 38, 562 A.2d 338, 342 (1989) (*en banc*); *Commonwealth v. Berrigan*, 369 Pa.Super. 145, 159, 535 A.2d 91, 98 (1987) (*en banc*), *alloc. denied*, 521 Pa. 609, 557 A.2d 341, *cert. denied*, 493 U.S. 883, 110 S.Ct. 219, 107 L.Ed.2d 173 (1989), *citing Commonwealth v. Colson*, 507 Pa. 440, 454, 490 A.2d 811, 818 (1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986). With respect to the first circumstance, a prospective juror, who indicates during *voir dire* that he or she will not be prejudiced, will not be disqualified based

on a remote relationship to an involved party. *Berrigan,
supra* at *id.*, 369 Pa.Superior Ct. at 159, 535 A.2d at 98.
Thus, where a prospective juror and one of the parties are
members of the same religious denomination, but the veni-
reperson has only a remote and not a direct financial
interest in the outcome of the litigation, and the venireper-
son indicates that he or she will not be prejudiced, a
challenge for the cause need not be granted. *See Berrigan,
supra; Sebring, supra.*

In *Rissmiller v. Evangelical Lutheran Congregation,
supra,* our Supreme Court held that the prospective jurors'
membership in congregations associated with a general
religious denomination did not give the jurors a sufficient
interest in the outcome of the litigation to render the trial
court's refusal to grant challenges for cause as to those
jurors. The same result is required here. The challenged
venirepersons who became members of the jury were not
members of the Immaculate Conception Church of Vinton-
dale with a direct financial interest in the outcome of the
litigation, but merely members of the Altoona–Johnstown
Diocese with a remote interest.

A prospective juror's remote financial connection to a
party to the proceedings does not render him or her incom-
petent to serve on a jury. In *Pennsylvania Power & Light
v. Gulf Oil Corp.*, 270 Pa.Super. 514, 411 A.2d 1203 (1980),
we held that in an action by a public utility against a
corporation, a change of venue was not warranted because,
although a large number of county inhabitants were cus-
tomers of the utility and could benefit from a judgment in
favor of the utility, the veniremen's interest in the case,
adverse to the defendant corporation, was too contingent
and, perhaps, insignificant to support the argument that
they would be biased against the defendant. In that case,
we compared the remote financial interest of a utility cus-
tomer, who may receive some benefit from a judgment in
favor of the utility in the form of reduced electric rate, to
that of a taxpayer whose taxes may be affected by their
judgment in a case involving the county, and concluded that
it was "too shadowy, indirect, remote and contingent to be

within the rule that a man cannot be a judge in his own case." *Id.*, 270 Pa.Superior Ct. at 535, 411 A.2d at 1214 (citations omitted). We then contrasted the interest of a public utility customer with that of a shareholder, who has a direct ownership interest in a corporation, and who would "reasonably be assumed to consider the interest of the corporation as his own." *Id.*, 270 Pa.Superior Ct. at 535 n. 23, 411 A.2d at 1214 n. 23. We concluded that if the veniremen's responses to *voir dire* satisfied the trial court that they could decide the case impartially, then they ought to be permitted to sit as jurors. *Id.*, 270 Pa.Superior Ct. at 538, 411 A.2d at 1216.

In *Commonwealth v. Berrigan, supra,* we held that, contrary to the defendants' assertion that four veniremen ought to have been dismissed for cause, the four venirepersons, who had only remote financial, familial, or situational contacts to the action, and who had indicated that they would be impartial jurors, qualified as jurors. The four were:

> (1) a woman who owned stock in [the company whose property was allegedly damaged by the defendants] but who stated that the impact of any decision in the case on her financial well-being would be 'very minute ...'; (2) a vice president for marketing of a company which [like the company whose property was damaged] had some government defense contracts ...; (3) the daughter of a man who worked as a manager in [the company whose property was allegedly damaged by the defendants] but who was not involved in the manufacture of ... equipment [like that allegedly destroyed by the defendants] ...; and (4) a title researcher who frequently worked in the ... courthouse [where the case was being tried].

*Berrigan, supra,* 369 Pa.Superior Ct. at 159, 535 A.2d at 98.

In the instant case, the appellants argue that each member of the Altoona–Johnstown Diocese has a personal financial interest in the outcome of the case by virtue of the fact that members of the Diocese fund church activities, and could be called upon to reimburse the church in the event that the appellants recovered a judgment against the

church. (Appellants' Brief at 9–10). As the public utility customers in *Pennsylvania Power & Light, supra,* and the four challenged venirepersons in *Berrigan, supra,* had financial, familial, or situational contacts to the action that were too remote to justify excluding them from the jury, the members of the Altoona–Johnstown Diocese, in the instant case, have a financial interest in the litigation that is too remote to uphold a challenge for cause. Given their tenuous financial interest in the outcome of the instant litigation, and the venirepersons' indications to the trial judge that they would decide the matter fairly and impartially, the trial court's refusal to grant the appellants' challenge for cause did not constitute an abuse of discretion.

▆ The appellants also contend that the trial court improperly instructed the jury regarding the viability of the hills and ridges doctrine. The appellants argue that the Pennsylvania Supreme Court, in *Ferencz v. Milie,* 517 Pa. 141, 535 A.2d 59 (1987), abandoned the doctrine of "hills and ridges" in slip and fall cases involving icy and snowy walks and parking lots. Therefore, the appellants claim, the trial court's instructions to the jury that, in order to recover, the appellant need prove that snow and ice had accumulated in hills and ridges, that the appellees had notice of such, and that the accumulation caused the appellant-wife to fall, was error.

> The doctrine of hills and ridges provides
> that an owner or occupier of land is not liable for general slippery conditions, for to require that one's walks be always free of ice and snow would be to impose an impossible burden in view of the climatic conditions in this hemisphere. Snow and ice upon a pavement create merely transient danger, and the only duty upon the property owner or tenant is to act within a reasonable time after notice to remove it when it is in a dangerous condition.

*Gilligan v. Villanova University,* 401 Pa.Super. 113, 116–117, 584 A.2d 1005, 1007 (1991). This Court has held, since

the *Ferencz* case, that in order to recover for a fall on an ice- or snow-covered sidewalk, a plaintiff must prove

(1) that snow and ice had accumulated on the sidewalk in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians travelling thereon; (2) that the property owner had notice, either actual or constructive, of the existence of such condition; (3) that it was the dangerous accumulation of snow and ice which caused the plaintiff to fall.

*See Gilligan, supra. See also Giosa v. School District of Philadelphia,* 127 Pa.Cmwlth. 537, 540–41, 562 A.2d 411, 413, *alloc. denied,* 525 Pa. 629, 578 A.2d 416 (1989).[1]

This Court in *Bacsick v. Barnes,* 234 Pa.Super. 616, 341 A.2d 157 (1975), explained the exceptions to the hills and ridges doctrine. It had snowed twelve to fifteen inches two days prior to the day when the plaintiff was struck by a car when she was forced to walk on the street because the sidewalk was inaccessible due to a snow bank of artificial origin. This Court stated:

It appears that the "hills and ridges" doctrine may be applied only in cases where the snow and ice complained of are the result of an entirely natural accumulation, following a recent snowfall. Thus, the rule of *Rinadli v. Levine* [406 Pa. 74, 176 A.2d 623 (1962)], *supra,* is predicated on the assumption that " '[t]hese formations are *natural phenomena* incidental to our climate.' " *Rinaldi v. Levine, supra,* 406 Pa. at 78, 176 A.2d [at] 625, quoting *Whitton v. H.A. Gable Co., supra* [331 Pa. 429], at 431, 200 A. [644] at 645 [1938] (emphasis supplied). In the instant case, evidence was received tending to prove that the snow bank which blocked Mrs. Bacsick's access to the sidewalk was, in large part, of artificial origin; it

---

1. This court has applied the *Ferencz* holding in negligence actions. In those instances, we discussed the *Ferencz* case in an assumption of the risk context. *See Baran v. Pagnotti Enterprises, Inc.,* 402 Pa.Super. 298, 307, 586 A.2d 978, 982 (1991); *Herr v. Booten,* 398 Pa.Super. 166, 176, 580 A.2d 1115, 1120 (1990), *alloc. denied,* 528 Pa. 635, 598 A.2d 992 (1991).

was apparently deposited as the result of the plowing of the street by the city and state snow plows.

This Court further stated in *Bacsick, supra,* that:

[t]his general "hills and ridges" rule is subject to a number of [other] significant exceptions. Thus, proof of hills and ridges is not required when the hazard is not the result of a general slippery condition prevailing in the community, but of a localized patch of ice. *Tonik v. Apex Garages, Inc.,* 442 Pa. 373, 275 A.2d 296 (1971); *Williams v. Schultz,* 429 Pa. 429, 240 A.2d 812 (1968). Nor is proof of hills and ridges required when an icy condition is caused by the defendant's neglect, as where a city maintains a defective hydrant, water pipe, drain, or spigot. *Ward v. Pittsburgh,* 353 Pa. 156, 44 A.2d 553 (1945).

234 Pa.Superior Ct. at 621–622, 341 A.2d at 160.

In *Tonik v. Apex Garages, Inc.,* 442 Pa. 373, 275 A.2d 296 (1971), our Pennsylvania Supreme Court addressed the applicability of the hills and ridges doctrine. The plaintiff fell on a crack in a public sidewalk where ice had formed. There had been no recent precipitation. The Court, in noting an exception to the doctrine, stated: "[p]roof of 'hills and ridges' is necessary only when it appears that the accident occurred at a time when general slippery conditions prevailed in the community, which is not the case here.... Where, as here, a specific localized patch of ice exists on a sidewalk otherwise free of ice and snow, the existence of 'hills and ridges' need not be established." 442 Pa. at 376, 275 A.2d at 298.

There is no indication in the case law that our Supreme Court has abandoned the longstanding hills and ridges doctrine as the appellants have asserted. In *Ferencz, supra,* like in *Tonik, supra,* the plaintiff fell on a specific localized patch of ice. Instantly, a review of the record reveals that generally slippery conditions existed in the community at the time of the appellant-wife's fall. A layer of fresh snow, which had fallen the day of the accident, covered a layer of packed snow and ice. Both the appellants' expert and the appellees' expert testified that there would have been a layer of packed ice and snow beneath a

layer of fresh snow on the parking lot at the time of the appellant-wife's fall. This corroborates the appellant-wife's testimony that fresh snow covered the parking lot. There was no testimony or evidence presented that appellant fell on a specific localized patch of ice. Therefore, the hills and ridges doctrine applied and the trial judge properly charged the jury with regard thereto.

Based upon the foregoing, the trial court's denial of the appellants' motion for a new trial and entry of judgment in favor of the appellees is affirmed.

Judgment affirmed.