J-A16011-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| RUTH TOSIC, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| JAMES COLEY, BERYL COLEY, CHRISTOPHER COLEY, HOME REAL ESTATE & DEVELOPMENT COMPANY AND CHARLES BUSSEY, | |
| Appellees | No. 3475 EDA 2017 |

Appeal from the Order Entered September 21, 2017
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 151203011

BEFORE:  BENDER, P.J.E., LAZARUS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:          **FILED SEPTEMBER 24, 2018**

Appellant, Ruth Tosic, appeals from the September 21, 2017 order granting summary judgment in favor of Appellees, James Coley and Beryl Coley (collectively "the Coleys"), and dismissing all of her claims against the Coleys with prejudice.[1]  After careful review, we affirm.

In its Pa.R.A.P. 1925(a) opinion, the trial court set forth the relevant facts and procedural history of this matter as follows:

---

[1] The Coleys joined Home Real Estate & Development Company and Charles Bussey (collectively "Additional Defendants") as additional defendants in the underlying negligence action; however, Additional Defendants are not parties to the Coleys' motion for summary judgment.  Additional Defendants filed a separate motion for summary judgment on May 25, 2017, which was denied by the trial court on September 21, 2017.

In January [of] 2014, [Appellant] was working as a certified nurse [*sic*] aide. Her work included on-site home visits with clients. On the morning of January 10[, 2014], she left her house to conduct home visits. Weather and sidewalk conditions were "slippery" at the time. She walked from her home to a bus stop, and she was "slipping and sliding" on the sidewalk along the way. She took the bus, walked to a coffee shop, and then walked to her first client's house, arriving at approximately 8:00 a.m. She had had difficulty making her way there because the sidewalks were slippery. She left her first client around 10:00 a.m. and headed towards the subway, which she intended to take to her second client visit. She walked through her first client's neighborhood, which was controlled by Philadelphia Housing Authority, and which had treated its sidewalks for ice. However, when she reached 2301 North Park Street [("the Property")], the sidewalk had apparently not been treated and was "covered" with ice. She slipped and fell on the sidewalk in front of [the] [P]roperty, injuring herself.

[The Property] was (and presumably still is) jointly owned by [the Coleys], out-of-state landlords who leased units [located on] the [P]roperty. The parties do not dispute that neither [the Coleys] nor their agents had shoveled or treated the sidewalk for ice or snow that morning. [Appellant] sued [the Coleys], alleging "[n]egligence and [c]arelessness" for failing to timely inspect the sidewalk, remove the icy condition, have a person on-site to monitor and treat the sidewalk, and/or warn pedestrians of the icy condition.

The Coley[s] … moved for summary judgment, arguing that the uncontroverted evidence showed that the icy condition at the time of the fall was due to the continuing freezing rain, and not to a previous precipitation event that had resulted in ice formation and/or accumulation. [The Coleys] asserted that, because the freezing rain condition was ongoing at the time of the fall, [they] did not have a duty to treat the sidewalk under the relevant Philadelphia snow removal ordinance until after the precipitation had ceased. Lastly, [the Coleys] contended that they were entitled to summary judgment because [Appellant] had failed to meet the requirements of the "hills and ridges" doctrine.

[Appellant] responded that [the Coleys] "breached their duty as property owners by failing to either delegate the duties of snow and ice removal to a third-party or to establish any sort of plan or mechanism[,] which[] would be implemented in

- 2 -

anticipation of wintry weather." She also argued that "piles of frozen snow and ice" remained in the walkway as a result of prior snow-shoveling, and that these piles satisfied the requirements of the "hills and ridges" doctrine. Lastly, she contended that [the Coleys'] standard of care was established not by the city snow-removal ordinance, but by the "unrebutted evidence of neighboring landowner, the Philadelphia Housing Authority who [*sic*] had treated [its] sidewalks with salt and/or chemical compound, which demonstrates the type of plan or mechanism that is required to be in place by landowners during an impending forecast of wintry precipitation."

The [c]ourt considered the motion, responses, and evidence, and granted [the Coleys] summary judgment [on September 21, 2017]. [Appellant] then brought the instant appeal.

Trial Court Opinion ("TCO"), 2/21/18, 1-2 (citation to record and footnote omitted).

Herein, Appellant raises the following issues for our review:

I.   Whether the lower court committed an error of law or abuse of discretion when it held that there was no genuine issue of material fact to overcome [the Coleys'] Motion for Summary Judgment?

II.  Where the lower court committed an error of law or abuse of discretion when it applied the "hills and ridges" doctrine and failed to consider facts in evidence which support that the ice formation on [the Property's] sidewalk was not created by an "entirely natural accumulation," and thus is an exception to the "hills and ridges" doctrine?

Appellant's Brief at 4.

Our standard of review with respect to a trial court's decision to grant or deny a motion for summary judgment is well-settled:

A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

- 3 -

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

***Thompson v. Ginkel***, 95 A.3d 900, 904 (Pa. Super. 2014) (citations omitted).

Here, in granting the Coleys' motion for summary judgment, the trial court relied on the "hills and ridges" doctrine, "a long standing and well entrenched legal principle that protects an owner or occupier of land from liability for generally slippery conditions resulting from ice and snow where the owner has not permitted the ice and snow to unreasonably accumulate in ridges or elevations." ***Biernacki v. Presque Isle Condominiums Unit Owners Ass'n, Inc.***, 828 A.2d 1114, 1116 (Pa. Super. 2003) (quoting ***Morin v. Traveler's Rest Motel, Inc.***, 704 A.2d 1085, 1087 (Pa. Super. 1997)).

[T]he doctrine of hills and ridges provides that an owner or occupier of land is not liable for general slippery conditions, for to require that one's walks be always free of ice and snow would be to impose an impossible burden in view of the climactic conditions in this hemisphere. Snow and ice upon a pavement create merely transient danger, and the only duty upon the property owner or tenant is to act within a reasonable time after notice to remove it when it is in a dangerous condition.

- 4 -

*Harvey v. Rouse Chamberlin, Ltd.*, 901 A.2d 523, 526 (Pa. Super. 2006) (quoting *Harmotta v. Bender*, 601 A.2d 837, 841 (Pa. Super. 1992)). We have further stated:

> [T]he "hills and ridges" doctrine may be applied only in cases where the snow and ice complained of are the result of an *entirely natural accumulation*, following a recent snowfall, as … the protection afforded by the doctrine is predicated on the assumption that these formations are natural phenomena incidental to our climate.

*Id.* (emphasis in original) (internal citations and quotation marks omitted). Additionally, the doctrine of "hills and ridges" will not prevent a plaintiff's recovery when the hazard is not the result of a general slippery condition prevailing in the community, but of a localized patch of ice. *Bacsick v. Barnes*, 341 A.2d 157, 160 (Pa. Super. 1975).

In order to recover for a fall on an ice or snow covered surface, a plaintiff must demonstrate:

> (1) that snow and ice had accumulated on the sidewalk in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians traveling thereon; (2) that the property owner had notice, either actual or constructive, of the existence of such condition; [and] (3) that it was the dangerous accumulation of snow and ice which caused the plaintiff to fall.

*Biernacki*, 828 A.2d at 1117 (quoting *Morin*, 704 A.2d at 1088). "Absent proof of *all* such facts, a plaintiff has no basis for recovery." *Rinaldi v. Levine*, 176 A.2d 623, 625 (Pa. Super. 1962) (emphasis in original).

Instantly, Appellant argues that "a genuine issue of material fact exists as to whether the ice formation on the sidewalk in front of [the Coleys']

- 5 -

[P]roperty was entirely the result of natural accumulation or whether human intervention was responsible for [the] ice formation." Appellant's Brief at 10. Appellant further asserts that if it is determined that she fell on ice that was not an "entirely natural condition[,]" then the "hills and ridges" doctrine should not be applied. *Id.* at 17. After careful review, we conclude that the record belies Appellant's contention that a genuine issue of material fact exists, and we uphold the trial court's application of the "hills and ridges" doctrine in this case.

In its opinion, the trial court summarized the following expert testimony on which it based its decision:

> [Appellant's] and [the Coleys'] respective expert meteorologists agree about all major factual issues in the case. [Appellant's] expert, Dick Mancini, opined that the most recent snowfall had been on January 2nd-3rd, which left a six-inch snow accumulation on the ground by the 4th. This was followed by a rise in temperature on January 5th and 6th, along with rain that rapidly deteriorated the snow-cover. Mr. Mancini stated[:] "The ground accumulation was near zero by the 7th. There would have remained piles of plowed/shoveled snow." The temperature dropped again on the 7th through the 9th, although without accompanying precipitation. Regarding the specific date of the incident, the 10th, Mr. Mancini opined that the first precipitation event of the day "began near 7:30 a.m… in the form of freezing rain with air temperatures of about 32 degrees. Due to the cold antecedent temperatures, pavements/sidewalks would have become icy almost immediately." He specifically opined regarding causation: "In summary, *'black ice' had started forming near, or a short time after, 7:30 a.m., creating the slippery platform that caused [Appellant] to slip and fall several hours later*." ... The report does not contain any description of the black ice platform, or of its depth, height, shape, etc.
>
> Mr. Mancini's statement, "There would have remained piles of plowed/shoveled snow," forms the crux of [Appellant's]

argument, as discussed more herein. The report does not make any further mention of snow piles or ice formations that were left over on the sidewalk surface from the January 2nd-3rd snowfall. He does not state that any specific piles or formations existed, or that any such piles had any causal relationship to the "slippery platform of black ice" on which [Appellant] slipped.

[The Coleys'] meteorologist, Matthew Potter, also produced an expert report. Mr. Potter agreed with Mr. Mancini's assertion that the ground accumulation prior to that morning's freezing rain was near zero, measuring it as "approximately a trace, less than 0.1 inches, of snow and sleet accumulated." He [did] disagree with Mr. Mancini regarding how much prior precipitation there had been that morning: Mr. Mancini stated that precipitation "began with" the freezing rain around 7:30 a.m., whereas Mr. Potter stated that there had already been precipitation earlier that morning, in the form of "scattered flurries and/or light snow" that eventually mixed with rain and became freezing rain between 6:00 a.m. and 8:00 a.m. Mr. Potter also stated that "[l]ight rain and pockets of freezing rain fell through the time of the incident, 10:15 a.m., and ended between 11:30 [a.m.] and 12 p.m." He averred, "Since the winter storm began, a trace, less than 0.1 inches, of snow and sleet fell, along with a trace to 0.10 inches of ice accretion from the freezing rain. A Freezing Rain Advisory was in effect."

Mr. Potter agreed that "the ice on the sidewalk [Appellant] slipped and fell on was from the ongoing winter storm on January 10, 2014. Our review of Mr. Potter's report reveals no mention of snow piles or banks, from shoveling/plowing or any other activity.

TCO at 4-6 (citations to record omitted) (emphasis in original).

Furthermore, Appellant stated in her deposition that,

the sidewalk where she fell was "covered with" "smooth" ice. When pressed, she specifically stated that the sidewalk was "covered with ice" and differentiated this from localized ice "patches." She also testified, "I laid there and waited for somebody. I couldn't get up…. There was ice all around me. I really physically tried to get up, but I couldn't." She was able to get up after "ten minutes or longer" when a passerby eventually assisted her. [Appellant] did not produce any evidence that specifically averred she fell on a patch of ice. She also specifically testified that there was no snow on the ground, only ice. Our

- 7 -

review of her deposition testimony shows no mention whatsoever of snow piles or banks caused by plowing or shoveling. We also fail to find any statements in her deposition about anyone shoveling in the neighborhood in the week prior.

*Id.* at 6 (citations to record omitted).

In light of the evidence of record, the trial court provided the following rationale for its decision:

> [Appellant] relies exclusively on Mr. Mancini's statement, "There would have remained piles of plowed/shoveled snow," in conjunction with his statements about the fluctuating temperatures in the preceding days, to assert that [Appellant] must have slipped on a pile of shoveled snow that must have existed from the prior snowfall, because the temperature changes must have caused the piles to melt and then re-freeze, and thus a re-frozen patch must have been responsible for [Appellant's] fall. We found this factual assertion to be an *unsupported extrapolation* from the plain language of Mr. Mancini's report, as Mr. Mancini did not at any time opine on the effects of the fluctuating temperatures on the piles of snow that may or may not have been present on the sidewalk at the time. [*Appellant*] *did not testify that any such pile existed or that she slipped on any such accumulation*.
>
> [Appellant's] deposition testimony, [Appellant's] expert meteorologist report, and [the Coleys'] expert meteorologist report all agree that [Appellant] slipped on a flat surface of black ice formed by the freezing rain that was ongoing at the time of the incident. Both experts opine that the leftover accumulation from the prior January 2nd-3rd winter storm was "near zero" or "less than 0.1 inches." Our review of [Appellant's] deposition does not show any discussion of snow piles or banks, or any assertions that people in her client's neighborhood had shoveled snow since the prior storm, or that any such piles were present on the sidewalk. Both experts specify that the ice on which [Appellant] slipped had been formed sometime that morning, which contradicts [Appellant's] assertion that the ice had formed a few days prior. Mr. Mancini does not specifically opine about the measure of ice accretion that would have formed by 10:15 a.m., as his only measurement is his statements regarding accretions prior to January 8th; however, Mr. Potter opines that accretion at

the time of the incident measured 0.1 inches or less. Both agree that a Freezing Rain Advisory was in effect at the time.

Based on the above, we found that [Appellant] fell due to a "generally icy condition." We did not find any evidence in the record that the ice was anything other than a "natural" accumulation, as the evidence showed it was created by the ongoing freezing rain. We found no evidence of "human intervention" from plowing or shoveling. ***See Harvey*** …, 901 A.2d [at] 527 … (holding that the doctrine did not apply when there was "undisputed evidence" that plowing had occurred between the cessation of snowfall and the accident, and holding that the black ice therefore "could not have been the result of an entirely natural accumulation"). Because of this finding, the "hills and ridges doctrine" applies.

When the doctrine applies, a plaintiff is required to show that the defendant had "unreasonably allowed" an accumulation to form in ridges or elevations that unreasonably and dangerously obstructed the plaintiff's path, and that such an accumulation caused her fall. [Appellant] has adduced no evidence that the ice had existed for any significant period of time, since the freezing rain was ongoing at the time of her fall. [Appellant] also adduced no evidence that [the Coleys] had notice of the icy condition and failed to remove it. Thus, we found that [the Coleys] were entitled to summary judgment as a matter of law.

*Id.* at 7-8. (citations to record omitted) (emphasis added).

After careful review, we agree with the trial court that the record contains no evidence that Appellant slipped on anything other than a natural accumulation of ice. Moreover, we agree that Appellant has failed to establish that there was any ridge or elevation that would unreasonably obstruct travel. In fact, as noted by the trial court, *supra*, Appellant herself testified that the sidewalk where she fell was covered with smooth ice. Appellant's own testimony only further supports the finding that she fell due to "generally icy conditions."

For the reasons stated above, we conclude that Appellant failed to establish a genuine issue of material fact. Accordingly, we discern no error of law or abuse of discretion by the trial court, and we affirm the order granting the Coleys' motion for summary judgment.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/24/18

- 10 -