J-A03002-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MARK SYLVESTER AND ALVERA SYLVESTER, HUSBAND AND WIFE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| ALVIN ZIEGLER SNOW REMOVAL AND ALVIN ZIEGLER | |
| Appellees | No. 1110 EDA 2021 |

Appeal from the Order Entered April 6, 2021
In the Court of Common Pleas of Monroe County
Civil Division at No.: 2933-CV-2019

BEFORE:  STABILE, J., DUBOW, J., and McCAFFERY, J.

MEMORANDUM BY STABILE, J.:                **FILED JULY 6, 2022**

Appellants Mark Sylvester ("Mr. Sylvester") and Alvera Sylvester ("Mrs. Sylvester"), husband and wife, appeal from the April 6, 2021 order of the Court of Common Pleas of Monroe County ("trial court"), which granted summary judgment in favor of Appellees Alvin Ziegler Snow Removal and Alvin Ziegler ("Mr. Ziegler") and dismissed Appellants' negligence complaint. Upon review, we affirm.

Unless otherwise specified, the facts of this case come from the trial court's April 6, 2021 opinion. **See** Trial Court Opinion, 4/6/21, at 1-5. Briefly, on April 12, 2019, Appellants filed a complaint sounding in negligence against Appellees. On January 9, 2020, they amended the complaint, alleging that Mr. Sylvester was injured by snow and ice falling

from the roof of Building No. 7 when he was leaving work at the Tobyhanna Army Depot ("Depot") on March 2, 2018. Amended Complaint, 1/9/20, at ¶ 8. Specifically, Appellants alleged that Mr. Sylvester "was suddenly and forcefully, without warning, hit with a large and heavy amount of snow and ice falling from the roof of Building 7," knocking him from his feet and striking him directly in the right eye. *Id.* at ¶¶ 8-9. As a result, Appellants alleged that Mr. Sylvester "suffered serious and permanent injuries, including, *inter alia*, a detached retina requiring surgical repair, and permanent loss of vision." *Id.* at ¶ 14. Appellants alleged that Appellees were liable for Mr. Sylvester's injuries because they were negligent in failing to clear the snow and ice from the roof in a timely manner and thus allowed the same to accumulate for an unreasonable amount of time.[1] *Id.* at ¶¶ 11-12. Thus, according to Appellants' allegations, Appellees' action or inaction created an increased risk of harm to persons lawfully present at the Depot that day. *Id.* at ¶ 13.

On April 13, 2020, Appellees filed an answer, denying the averments of the amended complaint and asserting new matter. On April 20, 2020, Appellants replied to Appellees' new matter. On June 11, 2020, Appellees moved for summary judgment, as a matter of law, against Appellants, claiming that Mr. Sylvester's injury occurred during an ongoing snowstorm.

_____

[1] Separately, Mrs. Sylvester brought an action for loss of consortium against Appellees.

They further claimed that, because of the active storm, a reasonable period of time within which they were expected to clear the snow and ice could not have expired. Thus, according to Appellees, they did not owe a duty to Mr. Sylvester to clear the snow and ice from the roof of Building 7 during the active storm. Based on this argument, Appellees noted that Mr. Sylvester was not entitled to relief.

On April 6, 2021, the trial court granted Appellees' summary judgment motion, concluding that, because Pennsylvania law permits landowners a "reasonable time" to remove dangerous snow and ice following a severe and ongoing storm, Appellees could not have been expected to clear the snow and ice from the roof of Building 7 by the time Mr. Sylvester was injured. Trial Court Opinion, 4/6/21, at 5-8. In so doing, the court recounted:

> Mr. Sylvester testified in his deposition that he left his house on March 2, 2018 at 6 a.m. to drive to work. There was no snow on the road during his 45-minute commute to the Depot. When he arrived at his workplace, Building No. 7 at the Depot, he had no difficulty walking from his truck to the building in the light snow that had accumulated on the ground.
>
> During the workday, heavy snow piled up, and five of the seven employees in Mr. Sylvester's building went home early due to the increasingly dangerous road conditions. Mr. Sylvester testified that he "should have did the smart thing and went home at half the day. I wish I did that now, but I didn't." At the end of his shift at 5:00 [p.m.], Mr. Sylvester and the other remaining employee attempted to leave the building, but were not able to open the door "more than an inch" because it was blocked by snow. He used an ice chopper to push some of the snow out of the way, got his arm out "and it took a long time, but I finally got it where we could get the door open enough to get ourselves through the door." Before leaving through that door, they had attempted to get out through the bay of the

- 3 -

building adjoining theirs, but that door was completely blocked by snow that had fallen off the roof, and it would not open at all despite their best efforts.

When Mr. Sylvester and his coworker were finally able to leave the building, it was still snowing. The parking area had not been cleared, but the road had been plowed. While they were descending the three or four steps from the building to the ground, the two men heard a noise which Mr. Sylvester knew to be snow falling off the roof. He looked up to see where the noise was coming from, and was struck and knocked down by ice and snow falling from the roof. He testified that he couldn't say for sure whether there had been snow or ice on the roof before the March 2 snowstorm.

After he walked to his car, Mr. Sylvester was not able to leave the Depot because Route 380 was impassible—there were several wrecks, and it was still snowing. At that time, Mr. Sylvester went back into the Depot and slept in Building No. 7, although the two men struggled to be able to open the door again due to the heavy buildup of snow.

According to the CompuWeather report, 20 inches of snow fell on March 2, 2018, with snowfall occurring from 3:45 a.m. until between 5:30 and 6:30 p.m. Before March 2, snow had not fallen since at least February 24, 2018.

At the time of the incident, [Appellees] had a contract with the Depot under which [they] performed ice and snow removal on the Depot premises. The contract provided:

> Snow and ice removal services throughout Tobyhanna Army Depot (TYAD), Tobyhanna, PA 18466. Contractor shall provide all supervision, labor equipment and materials necessary for performance of all operations in connection with the removal of snow and ice from various sites in the secure, unsecure and roof areas throughout Tobyhanna Army Depot (TYAD) on an as needed basis. Year period of performance 01 October 2017 through 30 September 2018. Services shall be performed in accordance with the performance work statement.

Alvin Ziegler testified during his deposition that on March 2, 2018, fourteen of his employees worked to remove snow at the Depot, which was their only job for the day. [Mr.] Ziegler did not have sufficient manpower to inspect the roofs of buildings at the Depot on March 2, due to the heavy snow. He would have had to hire 250-300 people to adequately clear all the Depot roofs given the severity of the storm. [Mr. Ziegler] began at 7:00 a.m. and worked approximately eight and a half hours, before deciding that further attempts at snow removal were "futile" and sending his employees home.

Trial Court Opinion, 4/6/21, at 2-5 (record citations omitted) (sic).

Appellants appealed. Both Appellants and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellants present three issues for our review, which we reproduce verbatim:

[I.] Whether the trial court abused its discretion and committed an error of law failing to conclude that there was a duty incumbent upon Appellees when evidence showed Appellees were aware that snow and ice tended to fall off of the roof where [Mr. Sylvester] was injure, and cause damage.

[II.] Whether the court abused its discretion and committed an error of law by granting Appellees' motion for summary judgment and concluding that Appellee[s were] not required to remove ice and snow from the roof during an ongoing storm when Appellees were working on location performing snow and ice removal during said active storm.

[III.] Whether the court abused its discretion and committed an error of law by granting Appellees' motion for summary judgment and determining that the hills and ridges doctrine applied to the facts of this case.

Appellants' Brief at 4 (unnecessary capitalization omitted).[2]

At the core, Appellants challenge the trial court's conclusion that Appellees did not owe Mr. Sylvester a duty to clear snow and ice from the roof of Building 7 during an active snowstorm because Pennsylvania law affords landowners a reasonable amount time to remove snow and ice.

Our standard of review of an order granting summary judgment is well-settled.

> [We] may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.
>
> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. *See* Pa.R.C.P. No. 1035.2. The rule [provides] that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the nonmoving party, and

---

[2] Based on our disposition of this appeal, we need not address separately Appellants' first two issues. Nonetheless, as Appellees observe, *see* Appellees' Brief at 27, Appellants' first two issues are devoid of any legal authority, in violation of Pa.R.A.P. 2119(b). It is well-established that the failure to develop an argument with citation to, and analysis of, pertinent authority results in waiver of that issue on appeal. *Giant Food Stores, LLC v. THF Silver Spring Development, L.P*., 959 A.2d 438, 444 (Pa. Super. 2008) (holding that failure to support an argument with citation to authority results in waiver), *appeal denied*, 972 A.2d 522 (Pa. 2009).

all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*E.R. Linde Const. Corp. v. Goodwin*, 68 A.3d 346, 349 (Pa. Super. 2013) (citation omitted; brackets in original).

Pennsylvania law burdens a plaintiff on a negligence claim to successfully establish the proverbial four elements: "(1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages." *Estate of Swift by Swift v. Northeastern Hosp.*, 690 A.2d 719, 722 (Pa. Super. 1997), *appeal denied*, 701 A.2d 577 (Pa. 1997). "The burden of proving the existence of negligence rests upon the party who has asserted it." *Schmoyer by Schmoyer v. Mexico Forge, Inc.*, 649 A.2d 705, 707 (Pa. Super. 1994). "The mere fact that an accident has occurred does not entitle the injured person to a verdict. A plaintiff must show that the defendant owed a duty of care, and that this duty was breached." *Rauch v. Mike-Mayer*, 783 A.2d 815, 824 n.8 (Pa. Super. 2001) (internal citations omitted), *appeal denied*, 793 A.2d 909 (Pa. 2002).

Section 324(A) of the Restatement (Second) of Torts imposes, *inter alia*, a duty on a defendant to third parties when the defendant has "undertaken" an obligation to provide certain services.

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

***(b) he has undertaken to perform a duty owed by the other to the third person***, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324(A) (emphasis added);[3] ***see Cantwell v. Allegheny Cnty.***, 483 A.2d 1350, 1353 (Pa. 1984) (concluding that Section 324(A) correctly states Pennsylvania law).  Applying Section 324A, our Supreme Court has stated that "[i]t is not the contract *per se* which creates the duty; it is the law which imposes the duty because of the nature of the undertaking in the contract." ***Farabaugh v. Pa. Tpk. Comm'n***, 911 A.2d 1264, 1283 (Pa. 2006) (citation omitted).  Therefore, in analyzing whether a defendant undertook a legal duty under Section 324A, we look at the specific contractual obligations or particular undertakings that the entity agreed to perform.  ***See Beury v. Hicks***, 323 A.2d 788 (Pa. Super. 1974) (utility provider undertook duty to maintain trees around its power lines by doing so for 24 years).  Thus, pursuant to Section 324A, an entity that assumes a landowner's responsibility to remove snow and ice from its roads and walkways has a duty toward invitees to exercise reasonable care in that undertaking. ***See Hoffmaster v. Cty. of Allegheny***, 550 A.2d 1023, 1026 (Pa. Cmwlth. 1988) (holding township that had assumed county's

_____

[3] Appellants do not identify the subsection of Section 324A that would apply *sub judice.*

responsibility to remove snow and ice from county roads pursuant to a contract could be held liable for negligence under Section 324A); *cf. Barnes v. Alcoa, Inc.*, 145 A.3d 730, 737 (Pa. Super. 2016) (finding no evidence that defendant was liable for snow removal under Section 324A when testimony established that defendant's subsidiary company, not defendant, had undertaken removal of snow and ice from parking lot).

Here, the evidence is uncontroverted that Appellees undertook or assumed the Depot's duty to its invitees to remove snow and ice under Section 324A(b). Therefore, under Section 324A(b), Appellees owed the same duty to exercise reasonable care in performing snow and ice removal as the Depot vis-à-vis third parties. As the trial court aptly noted, there exists a seminal case in this jurisdiction where a plaintiff was injured by snow and ice falling from a roof. In *Hutchison v. Montgomery Ward & Co.*, 70 A.2d 838 (Pa. 1950), the plaintiff was walking on Main Street in Butler, Pennsylvania, at 2:00 p.m. on December 29, 1945, during a thawing temperature, when "snow and ice, perhaps a bushel in quantity, fell upon [the plaintiff] from the roof of the building occupied by the defendant." *Hutchison*, 70 A.2d at 838-39. Eventually, a jury found in favor of the plaintiff, but the trial court entered judgment *non obstante veredicto* in favor of the defendant. Following the plaintiff's appeal, our Supreme Court affirmed the entry of judgment in the defendant's favor. In so doing, the Court explained:

> To permit a recovery under these circumstances would be to hold that the owner or occupier of a property must prevent

falling ice and snow at his peril. No Pennsylvania case has been cited, however, to support such a proposition. ***Our law imposes no absolute duty on an owner or occupier of property to keep his premises free from ice and snow at all times***. The question is not one of safety but of negligence. As recognized by this Court . . . Gutters along the edges of eaves will clog up from ice and snow and overflow under certain weather conditions. This is inherent in the nature of eaves and gutters, just as it is in roofs without them, and their maintenance could not ordinarily be held negligent. To charge the owner or occupier with culpability in such a case it must not only appear that the condition existed for so long a time as to visit him with knowledge of it, but must also appear that the danger was sufficiently obvious that he should have realized that someone might be injured because of it. Clearly the mere fact that snow or ice fell from the roof is not of itself sufficient proof of negligence. It was incumbent on appellant to show some unusual condition existing before the accident that would lead appellee, through its employees, in the exercise of reasonable and ordinary care, to believe that additional precautions were required.

***Id.*** at 840 (citations omitted) (emphasis added). The Supreme Court concluded that "the presence of snow on the roof of the building occupied by [the defendant] was not caused by any act or omission on its part, but was a natural phenomenon incident to our climate." ***Id.***

Moreover, in slip-and-fall cases factually distinguishable from this case,[4] we have fleshed out the contours of liability a landowner faces as a

_____

[4] The cases applied the hills and ridges doctrine, which "is a long standing and well entrenched legal principle that protects an owner or occupier of land from liability for generally slippery conditions resulting from ice and snow where the owner has not permitted the ice and snow to unreasonably accumulate in ridges or elevations." ***Collins v. Philadelphia Suburban Development Corporation***, 179 A.3d 69, 72 (Pa. Super. 2018); ***accord Morin v. Traveler's Rest Motel, Inc.***, 704 A.2d 1085, 1087 (Pa. Super.
*(Footnote Continued Next Page)*

result of injury caused to another by snow and ice on his or her property. In *Rinaldi v. Levine*, 176 A.2d 623 (Pa. 1962), our Supreme Court explained that "[t]here is no absolute duty on the part of a landowner to keep his premises and sidewalks free from snow and ice at all times. These formations are natural phenomena incidental to our climate." *Rinaldi*, 176 A.2d at 625. Additionally, it is settled that a landowner's duty to remove snow and ice is triggered only "*a reasonable time after*" the landowner becomes aware of the dangerous conditions created by the snow and ice. *Id.* (emphasis added); *see also Carrender v. Fitterer*, 469 A.2d 120, 124-25 (Pa. 1983) (explaining that a landowner has a duty to protect invitees from unknown, unforeseeable hazards on the premises, but not from hazards which are known or obvious to the invitees).

In *Biernacki v. Presque Isle Condominiums Unit Owners Ass'n, Inc.*, 828 A.2d 1114 (Pa. Super. 2003), we explained that an owner or occupier of land has a duty to remove a dangerous condition caused by snow or ice within a reasonable time after receiving notice of that condition. *Biernacki*, 828 A.2d at 1116 n.1. There, the plaintiff slipped and fell

*(Footnote Continued)* ──────────

1997). Under the hills and ridges doctrine, an owner of land is protected from liability for "generally slippery conditions resulting from ice and snow where the owner has not permitted the ice and snow to unreasonably accumulate in ridges or elevations." *Collins*, 179 A.3d at 72 (citations omitted). However, "proof of hills and ridges is not required when the hazard is not the result of a general slippery condition prevailing in the community, but of a localized patch of ice." *Harmotta v. Bender*, 601 A.2d 837, 842 (Pa. Super. 1992) (citations omitted).

between parked cars in the parking lot of the condominium she leased. On appeal, we affirmed the grant of summary judgment in favor of the defendant, concluding that it would be totally unreasonable to require the defendant to clear snow from a parking lot by 7:45 a.m. the morning after a snowfall had occurred overnight. *Id.* at 1117.

Relatedly, in *Collins*, we affirmed the grant of summary judgment in favor of the defendant, concluding that "a landowner has no obligation to correct the conditions until a reasonable time after the winter storm has ended." *Collins*, 179 A.3d at 75. We noted that it was undisputed that the plaintiff "slipped and fell on ice/snow during an active blizzard; that is, at a time when 'generally slippery conditions' prevailed in the community." *Collins*, 179 A.3d at 75 (citation omitted). Thus, we explained that the defendant "had no duty to remove the ice and snow, which began at approximately 8:30 a.m., from the sidewalk at the time [the plaintiff] fell between 1:30 p.m. and 2:00 p.m., particularly in light of the fact that the blizzard was still occurring at this time." *Id.* (citation omitted).

With the foregoing principles in mind, we conclude that the reasonableness standard enunciated in the slip-and-fall cases applying the hills and ridges doctrine is equally applicable to the case *sub judice*. As the trial court reasoned:

> [U]nder Pennsylvania law a landowner is given a reasonable time to clear public areas, at least while the storm is continuing as it was here. Mr. Sylvester could not get out of the door because of deep snow. The roads had been plowed, but the waist-deep snow in the parking area had not. The heavy storm, which,

- 12 -

according to [weather] reports, deposited over twenty inches of snow, had resulted in Route 380 becoming impassible, so that Mr. Sylvester had to stay overnight in his workplace.

It would be unreasonable to impose liability on [Appellees] for not removing snow from the rooftops of the Depot during this severe, ongoing storm. Because Pennsylvania courts allow landowners a "reasonable time" to remove dangerous snow and ice, [Appellees could not] have been expected to clear the snow from the roof of Building 7 by the time Mr. Sylvester was hurt.

Trial Court Opinion, 4/6/21, at 7-8. Mr. Sylvester suffered an injury during a severe and active snowstorm, dumping approximately 20 inches of snow. During such circumstances and, especially when the storm was active, it would have been totally unreasonable to require Appellees to clear snow and ice from the roof of Building 7. Thus, upon careful review of the entire record, viewed in the light most favorable to Appellants as the non-moving party, we must agree with the trial court's conclusion that Appellants failed to make out a *prima facie* case for negligence, as Appellees did not owe a duty to Mr. Sylvester to clear snow and ice from the roof of Building 7 during an ongoing storm. Accordingly, the trial court did not err in granting Appellees' motion for summary judgment.

Finally, to the extent Appellants argue that the trial court erred in extending the holding of cases involving the hills and ridges doctrine, we disagree. The trial court did not apply *per se* the hills and ridges doctrine, as employed in slip-and-fall cases, to this case where snow and ice falling from the roof of Building 7 caused Mr. Sylvester's injury. On the contrary, the trial court simply borrowed the reasonableness standard from those

cases to explain that an owner of land does not owe a duty to clear dangerous snow and ice until a reasonable time after a snowstorm ends. **See** Trial Court Opinion, 4/6/21, at 7 ("The same standard of reasonableness applies, whether the snow to be removed is on the ground or on the roof.").

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/06/2022